## COMMONWEALTH of Pennsylvania, Appellee

### v.

## George Harold FINK, Sr., Appellant.

Superior Court of Pennsylvania.

Submitted March 21, 2011.
Filed July 7, 2011.

George H. Fink, Sr., appellant, pro se.

Gregory S. Skibitsky, Jr., Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: BENDER, FREEDBERG and COLVILLE \*, JJ.

OPINION BY BENDER, J:

George Harold Fink, Sr., appeals the trial court's order denying his petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. Fink contends that the court erred in denying his request for reinstatement of his direct appeal right and in addressing the merits of his claim of ineffective assistance of counsel (IAC) in accordance with the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Following careful consideration of the record in this case in light of the applicable precedent, we find Fink's assertions meritorious. Accordingly, we vacate the trial court's order and direct that Fink's right to direct appeal be reinstated.

Fink is currently incarcerated, serving a sentence of life in prison for the strangulation death of his former paramour, Charlene DeWitt. Fink was convicted of Murder of the First Degree, Criminal Trespass and False Imprisonment following an incident in which, according to Fink's statement to the police, he overheard DeWitt talking on the telephone to her then-cur-

\* Retired Senior Judge Assigned to the Superior Court.

rent paramour about marriage in the same way she had once spoken to him. Fink confronted DeWitt, grabbed her, taped her hands together with duct tape, and cut his thumbs with a knife to illustrate the extent of his emotional suffering after the pair had parted. The two then talked and went to DeWitt's bedroom intending to have intercourse, but Fink failed to achieve an erection in response to which DeWitt ridiculed him. Fink acknowledged becoming infuriated and throttling DeWitt, his hands around her throat. He reported remembering nothing thereafter until DeWitt was dead. Forensic examination showed severe bruising to DeWitt's head, neck and torso, pulmonary edema, and small focal hemorrhages in DeWitt's eyes consistent with asphyxiation. In addition, DNA testing proved that the duct tape with which DeWitt was bound was smeared with Fink's blood.

Following a preliminary hearing, Fink filed an omnibus pre-trial motion seeking suppression of his statement to the police based on a purported *Miranda* violation. The trial court convened a hearing, from the transcripts of which the judge distilled the following chronology:

[Pennsylvania State] Trooper [Christopher] Wegrzynowicz and Trooper [ ] Altman picked up Fink at approximately 10:30 a.m. and advised him of his *Miranda* rights. Fink acknowledged and signed the waiver with Trooper Wegrzynowicz witnessing same. Reportedly Fink was not on medications, understood his rights and was transported back to the [Pennsylvania State Police (PSP) ], Shickshinny Barracks. Fink was a "person of interest" in the death of Charlene DeWitt. During the conversation, Fink acknowledged [that] the relationship with DeWitt had its ups and downs but denied knowledge about her death at her residence.

Fink [also] stated he had things in his head he wanted to get out. At Trooper Wegrzynowicz's suggestion, Fink spoke with Trooper [ ] Hannon, [PSP]. Fink also spoke with Sgt. [Ray] Whittaker, of the [PSP], whom Fink had known for fifteen years. Sgt. Whittaker asked Fink about some of [DeWitt's] personal items found near Fink's son's home. The conversation turned to the photo of DeWitt's fiancé, Dennis Murphy, and a car by Fink's son's home. At this time Fink said "Ray, maybe I should call a lawyer." According to both Trooper Wegrzynowicz and Sgt. Whittaker, questioning ceased. Fink then tried to initiate a conversation with Sgt. Whittaker as a friend, but [Whittaker told him] that his lawyer wouldn't see it that way and again advised [Fink] of his *Miranda* rights.

Fink then initiated conversation with Sgt. Whittaker for about five minutes. During that time he admitted he was transported to [DeWitt's] residence by a relative and dropped off. He waited for [DeWitt] to come home. He watched and listened to her on the phone with her fiancé and was upset as she said things to the fiancé that she had previously said to him. He grabbed her from behind, duct taped her and he cut himself in front of her. He went to the kitchen for a cigarette and then she wanted sex. In the bedroom he was unable to perform. He snapped when she belittled him and that's all he remembers.

Sgt. Whitaker then related Fink's remarks to Troopers Wegrzynowicz and Hannon. The defendant was again advised of his rights and he signed a waiver of same. The statement was then written down by Trooper Hannon, reviewed by Fink and signed by him.

Trial Court Opinion, 10/6/10, at 4–5 (paragraph breaks altered).

At the conclusion of the omnibus hearing, the trial court denied Fink's suppression motion, following which the matter proceeded to a non-jury trial. In its case in chief, the Commonwealth introduced the testimony of Trooper Wegrzynowicz, Sergeant Whittaker, and Gary Ross, M.D., the pathologist who autopsied DeWitt's body. In addition, the Commonwealth called multiple witnesses, with whom Fink had contact prior to the murder, each of whom testified concerning remarks Fink had made indicating his intent to kill himself and DeWitt in his distress over her new relationship. The Commonwealth also produced multiple photographs, serology reports, a DNA report, letters Fink had written to DeWitt and finally, the duct tape with which he had bound her hands. Fink chose not to testify in his own defense but did offer psychiatric testimony by Richard A. Fischbein, M.D., who testified that Fink suffered from severe depression and a disordered personality.

Following the close of testimony, the trial court found Fink guilty as charged. Fink then filed a direct appeal challenging the trial court's refusal to suppress all evidence gathered as a result of his statement to the police. In a divided vote, a panel of this Court, in a majority Memorandum by Judge Colville, affirmed the judgment of sentence with Judge (now Justice) Orie Melvin and Judge Shogan concurring in the result. In the Memorandum, the Court quoted the following excerpt from Fink's appellate brief, noting that it constituted the entirety of his analysis:

Instantly, the Appellant was subjected to custodial interrogation in the presence of numerous police officers under circumstances in which he reasonably believed that his freedom was restricted. The original interrogation was quite lengthy and occurred immediately after the Appellant was released for a 302 commitment pursuant to the Mental Health Act. More importantly, the Appellant[,] prior to giving his statement[,] asserted his right to a lawyer, a request that should have been scrupulously honored.

*Commonwealth v. Fink,* No. 451 MDA 2008, 968 A.2d 789, unpublished memorandum at 2 (Pa.Super. filed January 6, 2009). Finding Fink's brief insufficient to advocate his claim, the Court noted that the brief "[did] not make a single allegation of a *Miranda*[1] violation." *Id.* Significantly, the court eschewed any alternative analysis and declined to reach the merits of the case stating: "We will not form Appellant's arguments for him; to do so based on facts, law, and implications strewn throughout his brief would forever deprive him of the opportunity to have these issues argued by a proper advocate." *Id.* Although the Court deemed the sole issue in Fink's appeal "waived," it did not *quash* the appeal, but rather *affirmed* the judgment of sentence. *Id.* Fink then filed the PCRA petition underlying this appeal, requesting that the trial court reinstate his right to direct appeal so that new counsel might have an opportunity to develop his claim in a proper advocate's brief.

In response to Fink's petition, the trial court convened a post-conviction hearing but determined that the circumstances surrounding Fink's waiver on his original direct appeal were not sufficient to compel either a finding of prejudice or a presumption allowing reinstatement *nunc pro tunc* under applicable appellate case law. Additionally, the court determined that Fink's supporting claim, an assertion of ineffec-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

tive assistance of counsel on direct appeal, failed due to the absence of evidence to sustain the second and third prongs of the test for IAC under *Strickland* and *Pierce.* Fink has now appealed, *pro se,* and raised the following questions for our review:

I. Did the PCRA court err when it did not grant appellant his direct appeal rights following appellate counsel's failure to properly brief and argue the direct appeal issues?

II. Did the PCRA court improperly render a decision on issues other than appellant's right to file a proper, counseled direct appeal?

Brief for Appellant at 4.

The posture of this case is unusual in that Fink's questions place the applicable standard of judicial review directly at issue. Based on the parameters of the *Strickland/Pierce* test, claims of IAC are usually resolved relative to the specific circumstances of counsel's performance:

We begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Basemore,* 560 Pa. 258, 277 n. 10, 744 A.2d 717, 728 n. 10 (2000). To obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such

error. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

*Commonwealth v. Dennis,* 17 A.3d 297, 301 (2011)

 In a challenge to this standard, however, Fink contends that the inadequacy of counsel's brief to this Court on direct appeal rendered his representation ineffective *per se,* and compels consideration of his current claim in accordance with our holding in *Commonwealth v. Franklin,* 823 A.2d 906 (Pa.Super.2003). In *Franklin,* this Court recognized that where the brief filed on an appellant's behalf is "so flawed as to force us to suppress it and quash the appeal," the appellant is deprived of an independent review of his case and effectively stripped of his right to direct appeal. *Id.* at 910. Under such circumstances, counsel is presumed ineffective and the appellant's post-conviction claim of IAC must be granted and his right to direct appeal reinstated *nunc pro tunc. See id.* at 910–11. To the extent that the trial court has considered the appellant's IAC claim in accordance with the traditional three-pronged *Strickland/Pierce* IAC test and found the claim unproven, the court's analysis is to be discounted. *See id.* at 911.

The Commonwealth argues in response that Fink's case is not analogous to *Franklin,* as the defects at issue in Fink's brief on direct appeal did not result in the appeal being quashed but rather in this Court's affirmance of the judgment of sentence. Accordingly, the Commonwealth asserts that Fink is not entitled to a presumption of prejudice and the consequent appeal *nunc pro tunc,* but may only establish IAC pursuant to the traditional three-pronged test. *Id.* (citing *Commonwealth v. Reed,* 601 Pa. 257, 971 A.2d 1216 (2009)) (noting that "the filing of a deficient brief does not amount to *per se* ineffective-

ness."). Relying on *Reed* specifically, the trial court convened an IAC hearing and, applying the three-pronged test, found Fink's claim unsustainable for failure to establish the prejudice prong. Trial Court Opinion, 10/6/10, at 8.

Following a careful review of the record, we find *Reed* distinguishable. That distinction shapes our resolution of Fink's case. *See also Commonwealth v. Brown,* 18 A.3d 1147 (Pa.Super.2011). In *Reed,* our Supreme Court considered the applicability of the *Strickland/Pierce* test to allegations that the failure of appellant's counsel to file an adequate brief on direct appeal constituted IAC. Whereas the Commonwealth argued that Reed was constrained by the *Strickland/Pierce* line of cases to demonstrate that cognizable prejudice ensued from the deficiency of counsel's appellate brief, Reed contended that prejudice should be presumed pursuant to *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[2] *Reed,* 971 A.2d at 1221. Applying the *Strickland/Pierce* standard, the trial court determined that Reed's argument concerning the deficiency of his brief on direct appeal satisfied the arguable merit and reasonable basis prongs, but failed to sustain the prejudice prong. *Id.* at 1223 n. 6. On appeal, this Court determined to the contrary, that counsel's failure to file an adequate brief on direct appeal had met the threshold in *Cronic* and compelled a presumption of prejudice, which in turn, mandated a finding of IAC and reinstatement

of Reed's right to direct appeal. In support of its decision, the panel in *Reed* recited the following rationale:

> We recognize [that] this Court discussed the underlying merits of [Reed's] issue in disposing of his direct appeal.... We are hesitant, however, to view this discussion as a ruling on the merits of the issue. The Court disposed of the issue by finding it was waived, as the term "waived" is used in the context of direct appeal, due to the fact that it was not briefed appropriately and was not supplemented with adequate evidence of record. In essence, the Court declined to review the issue because there was nothing to review. Given this reality, we cannot also find [that] the Court ruled on the merits of [Reed's] issue because, as the Court aptly concluded before considering [Reed's] issue, there was nothing to review relative to that issue. To conclude to the contrary would be untenable.

*Id.* at 1220 (quoting *Commonwealth v. Reed,* No. 982 EDA 2007, 943 A.2d 320, unpublished memorandum, at 4–5 n.5 (Pa.Super. filed October 17, 2007)(*Reed I* )).

Considering the matter further, our Supreme Court analyzed the presumption of prejudice by analogy to its prior decisions finding prejudice *per se* where counsel omits perfecting an appeal by failing to file a required Rule 1925(b) statement. *See id.* The Court's discussion recognizes that

---

**2.** In *Cronic,* the United States Supreme Court held that IAC sufficient to undermine a defendant's Sixth Amendment right to counsel may be presumed under "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *See Cronic,* 466 U.S. at 658, 104 S.Ct. 2039. The Court characterized the applicable circumstances as those in which the defendant is denied access to an attorney at a critical stage of trial or where "counsel en-

tirely fails to subject the prosecution's case to meaningful adversarial testing[.]" *Id.* at 659, 104 S.Ct. 2039. "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 n. 26, 104 S.Ct. 2039 (citing *Strickland,* 466 U.S. at 693–96, 104 S.Ct. 2052.).

only those omissions of counsel on appeal that completely foreclose appellate review offer a basis for a presumption of prejudice on a subsequent IAC claim:

[I]t is well established that the decision whether to presume prejudice or to require an appellant to demonstrate actual prejudice "turns on the magnitude of the deprivation of the right to effective assistance of counsel." As we observed in [*Commonwealth v.*] *Lantzy*, [558 Pa. 214, 736 A.2d 564 (1999)] the failure to perfect a requested direct appeal is the functional equivalent of having no representation at all. The difference in degree between failures that completely foreclose appellate review, and those which may result in narrowing its ambit, justifies application of the presumption in the more extreme instance.

*Id.* (quoting *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795, 801 (2005)). Acknowledging the limitations this analysis imposes, our Supreme Court has noted specifically:

[T]he defining feature of all of these cases is that the acts or omissions of counsel were of the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame. In this regard, it is worth noting that the portion of the *Cronic* decision explaining the theory underlying the concept of presumptive

prejudice begins by observing that effective assistance is constitutionally guaranteed not for its own sake, but because of its effect upon the accused's ability to receive a fair trial.

*Id.* at 1225 (citations omitted). "To phrase it differently, '[C]ounsel's constitutional error [must have] caused a total failure in the relevant proceeding.'" *Brown*, 18 A.3d at 1156. *See also Reed*, 971 A.2d at 1226 (quoting *Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686, 700–01 (2008)) ("*Cronic* is limited to situations where counsel's failure is complete, i.e., where 'counsel has entirely failed to function as the client's advocate.'").

Noting that the foregoing standard had been satisfied in only three instances,[3] the Supreme Court determined that a deemed waiver by this Court would not constitute a fourth such instance so long as the panel had conducted a merits review. The following discussion is illustrative:

With the aforementioned cases in mind, we likewise conclude that the filing of an appellate brief, deficient in some aspect or another, does not constitute a complete failure to function as a client's advocate so as to warrant a presumption of prejudice under *Cronic*. Unlike the case in *Lantzy*, *Halley*, and *Liebel*, and contrary to the Superior Court's conclusion herein, Reed's direct appeal counsel's conduct in the instant case did not deprive Reed of his constitutional right to appeal. Significantly, Reed's direct appeal counsel filed a timely notice of appeal, which was docketed with the

**3.** The Court cataloged those three instances as follows:

there have been only three circumstances under which this Court determined that counsel's conduct constituted a constructive denial of counsel warranting a presumption of prejudice: (1) where counsel failed to file a requested direct appeal, *see Lantzy*, *supra;* (2) where counsel failed to file a statement

of matters complained of on appeal, *see Halley*, *supra;* and (3) where counsel failed to file a requested petition for allowance of appeal, thereby depriving the client of the right to seek discretionary review, *see Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003).

*Reed*, 971 A.2d at 1225.

prothonotary. Although the Superior Court in *Reed I* opined that counsel's failure to provide appropriate citation to authority and a copy of the notes of testimony resulted in waiver of Reed's argument, the court did not quash Reed's appeal. Indeed, the issues apparently were sufficiently presented to allow the court to address the merits of Reed's arguments, as the court indicated that it reviewed the evidence and the record. *See Reed I*, at 9. At most, the Superior Court's review of Reed's arguments on the record before it may be viewed as a "narrowing of the ambit" of Reed's appeal. *See Reaves*, 592 Pa. at 150, 923 A.2d at 1129. Moreover, to extend the *Cronic* exception to cases involving a defect in an appellate brief essentially would transform the exception into a rule, as many appellate briefs contain at least one arguable defect.

*Id.* at 1226–27.

Significantly, the Supreme Court's decision in *Reed* does not contemplate the situation at issue where the panel of this Court that reviewed the defendant's direct appeal deemed the sole issue waived *and did not conduct an alternative merits review.* Indeed, the Court's emphasis on the ability of the merits panel in *Reed* to conduct an alternative review notwithstanding the finding of waiver renders the absence of a merits review on Fink's appeal controlling. As Judge Colville made clear in the Majority memorandum, counsel's failure to analyze the circumstances under which Fink gave his statement specifically in light of the *Miranda* line of cases deprived the defendant "of the opportunity to have these issues argued by a proper advocate." *Fink*, No. 451 MDA 2008, unpublished memorandum at 2. That default directly implicates the Sixth Amendment right to counsel that predicates the holding in *Cronic* and thereby compels application of the attendant presumption of prejudice.

Counsel's failure to offer the citation and discussion necessary to this Court's consideration of Fink's claims on direct appeal precluded analysis of their merits and directly foreclosed Fink's right to appellate review with the aid of effective counsel. Under such circumstances, our Supreme Court's holding in *Reed* poses no impediment to reinstatement of Fink's right to direct appeal; indeed, it would appear to condone it. *See Reed*, 971 A.2d at 1222 ("The difference in degree between failures that completely foreclose appellate review, and those which may result in narrowing its ambit, justifies application of the presumption [of prejudice] in the more extreme instance.").

In so concluding, we acknowledge that in reviewing Fink's claims on direct appeal, the merits panel that deemed them waived *affirmed* the judgment of sentence rather than *quashing* the appeal. The terminology the panel used differs from that suggested by our Supreme Court's holding in *Reed*, which posits that a purely procedural disposition based on waiver properly results in the appeal being quashed, whereas affirmance of the judgment of sentence indicates that the panel disposed of the case on the merits of the claims raised. *See id.* at 1226 ("Although the Superior Court in *Reed I* opined that counsel's failure to provide appropriate citation to authority and a copy of the notes of testimony resulted in waiver of Reed's argument, the court did not quash Reed's appeal."). Nevertheless, the panel also abstained from considering the merits of Fink's claims, whereas in *Reed*, the panel conducted a merits review notwithstanding the finding of waiver, prompting our Supreme Court's conclusion that counsel's dereliction in that appeal merely "narrow[ed] the ambit" of Reed's appeal but did not foreclose appellate review. *See id.* This distinction is critical and compels our

recognition that application of the *Cronic* default standard for briefing deficiencies on direct appeal depends on the extent to which this Court considered the merits of the claims *and not on the use of a single word in the order line.* Consequently, while procedural dispositions based on waiver properly should result in the *quashing* of the appeal, the use of the word "affirmed" should not be deemed dispositive where the reviewing panel did not undertake an alternative merits review as the panel did in *Reed.* By the same token, the panel's completion of a merits review in a direct appeal where the defendant's appellate brief is so deficient as to result in a primary finding of waiver may preclude application of the *Cronic* default standard pursuant to our Supreme Court's holding *Reed.* Under such circumstances, the defendant would be eligible for post-conviction relief on resulting IAC claims only upon satisfaction of the three-pronged test imposed by the *Strickland/Pierce* line of cases.

Ultimately, in view of the circumstances of record as well as the holdings in *Cronic* and *Reed,* we find this case most similar to our prior decision in *Franklin,* the case upon which Fink relies. In that case, as in this one, the failure of counsel on direct appeal to provide adequate citation to authority and analysis of the appellant's claims resulted in waiver and foreclosed consideration of the merits of the appeal. Although the panel in *Franklin* quashed the underlying appeal rather than affirming the judgment of sentence, we find the attendant distinction to be one without a difference where in both instances a merits review could not be completed. We conclude accordingly that, consistent with the holding of the United States Supreme Court in *Cronic,* Fink is entitled to the presumption that he was constitutionally prejudiced by counsel's omissions on direct

appeal and that he is thereby entitled to reinstatement of his direct appeal right.

For the foregoing reasons, we vacate the trial court's order denying post-conviction relief and order Fink's right to direct appeal reinstated.

Order **VACATED.** Case **REMANDED** for an order reinstating the right to direct appeal with assistance of counsel. Jurisdiction **RELINQUISHED.**

Judge COLVILLE files a dissenting opinion.

## DISSENTING OPINION BY COLVILLE, J.:

In holding that the presumption of prejudice attaches to Appellant's ineffective assistance of counsel claim, the Majority concludes that the panel of this Court that reviewed Appellant's direct appeal found Appellant's sole issue waived and did not conduct an alternative merits review. Majority Opinion at 433. Because I cannot agree with this conclusion, I dissent.

Appellant raised one issue on direct appeal. The memorandum opinion filed by this Court determined that Appellant waived this issue. The memorandum's result was the affirmance of Appellant's judgment of sentence. Importantly, while Judges Orie Melvin and Shogan did not join the memorandum opinion, they did concur in the result. In other words, Judges Orie Melvin and Shogan agreed with the memorandum opinion that Appellant's judgment of sentence should be affirmed. Because Judges Orie Melvin and Shogan did not write separately from the memorandum opinion, we cannot not discern why they concluded that Appellant's judgment of sentence should be affirmed. Although they could have determined that Appellant waived the issue on grounds different from the ground espoused by the memorandum opinion, they also could have

determined that Appellant's issue failed on its merits.

Given these circumstances, Appellant has failed to convince me that the presumption of prejudice should attach to his claim of ineffective assistance of counsel. For this reason, I would affirm the PCRA court's order.