# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMSC-002

Filing Date:  November 29, 2018

Docket No. S-1-SC-35491

DAVID R. LUKENS, JR.,

   Petitioner,

v.

GERMAN FRANCO, Warden,

   Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Cristina Jaramillo, District Judge**

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Laurie Pollard Blevins, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CLINGMAN, Justice.**

**{1}**     In this appeal of the district court's denial of habeas corpus, Petitioner David Lukens, Jr. claims ineffective assistance of appellate counsel in his direct appeal and requests a new appeal or reversal of his conviction. We consider (1) whether prejudice due to deficient performance of Petitioner's attorney should be presumed or whether Petitioner must prove that actual prejudice occurred on direct appeal and, (2) if there was prejudice, whether the remedy should be a new appeal. Although the performance of Petitioner's appellate counsel on direct appeal (Appellate Counsel) was clearly deficient in certain instances, we hold that

1

prejudice may not be presumed because the performance of Appellate Counsel did not deprive Petitioner of his constitutional right to a direct appeal of his conviction. We further hold that Petitioner has failed to establish actual prejudice in his direct appeal. Because Petitioner did not establish prejudice, we do not reach the question of remedy. We affirm the district court's denial of the petition for a writ of habeas corpus.

**{2}** We pause to address deficient briefing that is too often submitted to this Court and to other courts throughout New Mexico. We observe a degree of irony in this case because the very briefs in this habeas appeal alleging deficient performance were neither examples of good structure nor models of clarity. Although we have determined that Petitioner did not suffer a constitutional deprivation due to ineffective assistance of counsel, we are concerned about performance issues in general and about the performance of Appellate Counsel in this case in particular. No appellate court or district court should ever hesitate to return briefing or order rebriefing with a short deadline when briefing is unclear or lacks citations or is otherwise unprofessional. "[A]n order to rebrief provides a reasonable means for imposing a minimal level of quality control on the appellate briefing process." Douglas E. Cressler, *Mandated Rebriefing: A Judicial Mechanism for Enforcing Quality Control in Criminal Appeals*, 44-JUL Res Gestae 20, 20.

**{3}** The New Mexico Rules of Appellate Procedure authorize our appellate courts to impose appropriate sanctions.

> For any failure to comply with these rules or any order of the court, the appellate court may, on motion by appellant or appellee or on its own initiative, take such action as it deems appropriate in addition to that set out [herein], including but not limited to citation of counsel or a party for contempt, refusal to consider the offending party's contentions, assessment of fines, costs or attorney fees or, in extreme cases, dismissal or affirmance.

Rule 12-312(D) NMRA.

**{4}** The New Mexico "Rules of Professional Conduct . . . presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure [and] laws defining specific obligations of lawyers" where "[f]ailure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process." Rule 16-Preamble—Scope NMRA.

**{5}** This Court has stated,

> We remind counsel that we are not required to do their research, and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority. When a criminal conviction is being challenged, counsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in

2

violation of our rules of appellate procedure.

*State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (citations omitted).

**{6}** We are not alone in our concern. A law review article authored by the Administrator of the Indiana Supreme Court discusses that court's experience with deficient briefing in criminal appeals. *Cressler*, *supra*, at 20 & n.a1. The article describes the briefing in a case, similar to the case before us, where the Indiana Supreme Court required appointment of new counsel for a criminal appellant:

> Throughout the argument section of the appellant's brief, factual assertions were made without reference to the record. Contentions of legal error were made without cogent analysis and without sufficient explanation of how the alleged errors were preserved for appellate review. The Court also found the arguments of counsel to be unreasonably difficult to follow. Grammatical errors littered the brief. The Court ultimately concluded that, taken as a whole, the brief was inadequate.

*Id.* at 21 & ns.19-20 (citing *Perez v. State*, Cause No. 12S00-9910-CR-633, *appeal to the Indiana Supreme Court pending as of the publication of this July 2000 law review*) (reporting that in April 2000 the *Perez* Court struck the appellate brief and remanded the cause for appointment of new counsel and rebriefing); *see also Perez v. State*, 748 N.E. 2d 853 (Ind. 2001) (reviewing the convictions on direct appeal).

**{7}** Courts are not required to try and make sense of work product so flawed that its meaning cannot be discerned. We remind our courts and the New Mexico bar that the New Mexico Rules of Appellate Procedure and Rules of Professional Conduct empower courts to sanction lawyers, including by return of briefs and reassignment of counsel for "failure to comply with an obligation or prohibition imposed by a rule."

## I.     BACKGROUND

**{8}** Petitioner is the father of a child who was born prematurely and injured during his first months of life (Child). On December 5, 2005, a hospital alerted law enforcement when x-rays revealed multiple fractures throughout Child's body. A grand jury indicted Petitioner for intentional child abuse resulting in great bodily harm in violation of NMSA 1978, Section 30-6-1 (2005). After a two-week trial, the jury convicted Petitioner of first-degree negligent child abuse by endangerment, resulting in great bodily harm. The district court sentenced Petitioner to eighteen years in prison but reduced his sentence to twelve years upon finding mitigating circumstances. Petitioner filed a notice of appeal.

**{9}** Appellate Counsel Trace Rabern filed a docketing statement with the New Mexico Court of Appeals but failed to ensure timely filing of the record proper with the Court of Appeals. The Court of Appeals allowed the late filing of the record proper and eventually

3

affirmed the conviction. *State v. Lukens*, A-1-CA-30819, mem. op. ¶ 22 (July 1, 2013) (nonprecedential). Throughout its opinion, the Court of Appeals noted that Appellate Counsel failed to develop arguments, failed to cite the record, failed to cite authorities, and did not provide a basis for relief. *Id.* ¶¶ 6, 9, 10, 14, 17, 19-21. Due to these failures, the Court of Appeals did not directly address some issues that Appellate Counsel raised. *See id.* ¶¶ 6, 9, 14, 17, 19-21.

**{10}** After losing on direct appeal, Appellate Counsel filed an untimely petition for writ of certiorari in this Court and moved for consideration of the petition as timely. We denied the motion. Appellate Counsel failed to communicate with Petitioner regarding the status of his appeal, and consequently Petitioner did not learn that he was to be remanded to prison until the day before his sentence was to begin.

**{11}** Petitioner then filed a pro se petition for a writ of habeas corpus under Rule 5-802 NMRA (2009). The district court summarily dismissed the petition. After consultation between the district attorney's office and the public defender's office, the district court reinstated the petition and appointed new counsel (Habeas Counsel) for Petitioner.

**{12}** Habeas Counsel filed an amended petition for writ of habeas corpus on behalf of Petitioner, primarily alleging ineffective assistance of appellate counsel. Habeas Counsel informed the district court that Appellate Counsel had been indefinitely suspended from the practice of law. The district court denied the amended petition, finding that Petitioner "failed to demonstrate adequate prejudice to demonstrate the results would have been different but for the errors of his appellate counsel." Petitioner now seeks this Court's review of the district court's denial of habeas corpus.

**{13}** We granted certiorari under Rule 12-501 NMRA (2014) and ordered the parties to brief Petitioner's ineffective assistance of counsel issues, particularly (1) "whether the standard for ineffective assistance of counsel always requires prejudice" and (2) "if there was ineffective assistance of counsel, whether the case should be remanded to the New Mexico Court of Appeals for a new appeal."

## II. DISCUSSION

**{14}** Petitioner alleges that the assistance of Appellate Counsel was so deficient that prejudice should be presumed and that we should grant him a new appeal. Alternatively, Petitioner argues that he suffered actual prejudice and that had it not been for such deficient appellate representation, his conviction would have been reversed and should be reversed now. The State argues that prejudice should not be presumed and that Petitioner did not suffer actual prejudice.

**{15}** We review findings of fact concerning habeas petitions to determine whether substantial evidence supports the district court's findings. *Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466. Substantial evidence "is evidence that a reasonable

4

mind would regard as adequate to support a conclusion." *Fitzhugh v. N.M. Dep't of Labor, Emp't Sec. Div.*, 1996-NMSC-044, ¶ 24, 122 N.M. 173, 922 P.2d 555. We review questions of law or questions of mixed fact and law, including the assessment of effective assistance of counsel, de novo. *Duncan*, 1993-NMSC-011, ¶ 7; *see also Strickland v. Washington*, 466 U.S. 668, 698 (1984) ("[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.").

**A.  Right to Effective Assistance of Appellate Counsel in New Mexico**

**{16}**    New Mexico recognizes "that both the Federal Constitution and Article II, Section 14 of the New Mexico Constitution provide a right to the assistance of counsel both at trial and on appeal." *State v. Vigil*, 2014-NMCA-096, ¶ 11, 336 P.3d 380. Criminal defendants in New Mexico are entitled to the effective assistance of appellate counsel. *Id.* ¶ 13 ("[W]here a right to counsel has been guaranteed, that right includes a guarantee that counsel be effective.").

**{17}**    The two-pronged ineffectiveness standard of *Strickland*, 466 U.S. at 687, *see* 697-98, requires a defendant to show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." To show deficiency the defendant must demonstrate that "defense counsel did not exercise the skill of a reasonably competent attorney." *Duncan*, 1993-NMSC-011, ¶ 10 (citing *Strickland*, 466 U.S. at 687). Defense counsel's performance is deficient if the "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (quoting *Strickland*, 466 U.S. at 688). The defendant must also show prejudice to the defense resulting from counsel's deficient performance. *Id.* ¶ 25. To show actual prejudice, there must have been "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceeding]." *Id.* It is the defendant's burden to show both incompetence and prejudice. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494.

**{18}**    A "'defendant must [also] overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Lytle*, 2001-NMSC-016, ¶ 26 (quoting *Strickland*, 466 U.S. at 689). Appellate court "'scrutiny of counsel's performance must be highly deferential.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). Every effort should be made "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

**{19}**    A court may "'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice'" to avoid the deficient performance analysis if this simplifies disposition. *State v. Plouse*, 2003-NMCA-048, ¶ 13, 133 N.M. 495, 64 P.3d 522 (quoting *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000)), *abrogated on other grounds by State v. Garza,* 2009-

5

NMSC-038, ¶ 48, 146 N.M. 499, 212 P.3d 387; *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both [the deficiency and prejudice] components of the inquiry if the defendant makes an insufficient showing on one."). "[T]he proper standard for evaluating [a] claim that *appellate* counsel was ineffective . . . is that enunciated in *Strickland*." *Smith*, 528 U.S. at 285 (emphasis added).

## B. Petitioner's Ineffective Assistance of Appellate Counsel Claims

**{20}** Petitioner advances alternative arguments to establish ineffective assistance of appellate counsel: (1) prejudice should be presumed because Appellate Counsel's performance was so deficient that Petitioner is entitled to a new appeal or (2) Petitioner suffered actual prejudice on his direct appeal because his conviction would have been reversed had Appellate Counsel not performed so deficiently.

**{21}** Petitioner points to numerous specific errors and omissions of Appellate Counsel to support his ineffective assistance of appellate counsel (IAAC) claim. Appellate Counsel's brief in chief on direct appeal lacked record citations required by our Rules of Appellate Procedure. *See* Rule 12-213(A) NMRA (2010, recompiled 2017). Petitioner argues that Appellate Counsel failed to develop "almost all of the seven issues raised on appeal . . . and failed in some instances to communicate to the [Court of Appeals] in full sentences or completed thoughts." Petitioner observes that Appellate Counsel "failed to argue fundamental error on the issues raised on appeal that were not preserved by trial counsel." Petitioner notes that Appellate Counsel failed to submit a reply brief to the Court of Appeals in response to the State's answer brief which specifically noted the shortcomings of Petitioner's brief in chief. Appellate Counsel failed to submit a timely petition for a writ of certiorari in this Court. Petitioner also claims that he was not advised to seek new counsel when Appellate Counsel took leave from her law practice to seek medical treatment and that Appellate Counsel neglected to inform Petitioner of the status of his appeal. The State concedes that Appellate Counsel's performance was "quite lacking." Without further analysis, we presume deficient performance based on this agreement of the parties.

### 1. Appellate Counsel's errors did not deprive Petitioner of his constitutional right to one appeal and therefore do not justify presumed prejudice in this case

**{22}** Petitioner argues that because Appellate Counsel "was ineffective and deprived him of an appeal on the merits of his case," he is entitled to a new appeal. Petitioner asserts that Appellate Counsel's "omissions in the brief in chief constitutionally prejudiced [Petitioner]." We examine the question whether presumed prejudice should apply in Petitioner's circumstances.

**{23}** Prejudice should be presumed in circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984); *see, e.g.*, *Grogan*, 2007-NMSC-039, ¶ 12. Three examples

of deficient performance that could warrant a presumption of prejudice: are (1) denial of representation by counsel, (2) failure of defense counsel to subject the state's case to meaningful adversarial testing, and (3) denial of effective cross-examination of state witnesses. *Grogan*, 2007-NMSC- 039, ¶ 12 (citing *Cronic*, 466 U.S. at 659).

**{24}** No New Mexico court has presumed prejudice based on the argument advanced by Petitioner. Petitioner asserts that he was deprived of his right to appeal because Appellate Counsel's errors resulted in the inability of the Court of Appeals to consider the merits of his claims. In support of this argument, Petitioner cites *Commonwealth v. Fink*, 2011 PA Super 141, 24 A.3d 426. The reasoning in *Fink* is helpful in evaluating Petitioner's claim, but we reach a different conclusion than Petitioner reaches.

**{25}** In *Fink*, a defendant appealed his conviction, challenging the trial court's denial of his motion to suppress the statement he gave to police. *Id.* at 429. The appellate court concluded that the appellate brief was "insufficient" and affirmed the conviction. *Id.* Subsequently on postconviction appeal, the same appellate court reinstated the defendant's right to direct appeal, holding that "only those omissions of counsel on appeal that completely foreclose appellate review offer a basis for a presumption of prejudice on a [subsequent ineffective assistance of counsel] claim." *Id.* at 429, 432, 434. *Fink* supports the proposition that prejudice should be presumed only when the defendant was completely deprived of a merits review at the appellate level. *Id.* at 432.

**{26}** In this case, Appellate Counsel's numerous errors did not deprive Petitioner of his right to a merits review by the Court of Appeals. Appellate Counsel filed a forty-eight page brief in the Court of Appeals. Although the Court of Appeals admonished Appellate Counsel for the brief's shortcomings, it still considered the merits of arguments made therein. *See generally Lukens*, A-1-CA-30819, mem. op. For example, despite Appellate Counsel's failure to cite the record proper, the Court of Appeals thoroughly addressed an issue raised by Petitioner pertaining to an audio recording made by Child's mother that was admitted into evidence at trial. *See id.* ¶¶ 18-19. After a multiparagraph merits analysis, the Court of Appeals described Petitioner's argument as "particularly unpersuasive in light of his cross-examination of [Child's] mother and his production of an expert witness to discredit the value of the tape recordings." *Id.* ¶ 19.

**{27}** In its order denying Petitioner a writ of habeas corpus, the district court also concluded that the Court of Appeals had adequately addressed Petitioner's concerns on appeal, stating that

> it is not as though Petitioner was fully denied a meaningful review of his issues on appeal. Despite the Court of Appeals' issues with the quality of Petitioner's arguments and record citations on appeal, Petitioner was given the benefit of the doubt regarding his factual allegations and the [C]ourt [of Appeals] addressed the merits of several of his claims.

7

**{28}** In analyzing an IAAC petitioner's assertion that deficient briefing caused the loss of the petitioner's appeal of right and that prejudice should therefore be presumed, the determinative issue is whether the appellate court failed to conduct a merits review or, in other words, whether "[c]ounsel's constitutional error . . . caused a total failure in the relevant proceeding." *Fink*, 24 A.3d at 432 (internal quotation marks and citation omitted). Petitioner's direct appeal was not a total or even a substantial failure. Petitioner's right to direct appeal was not violated. Deficient briefing does not necessarily equate to ineffectiveness. Because Appellate Counsel's failures narrowed the scope of Petitioner's appeal without denying a merits review, those failures do not offer a basis for a presumption of prejudice on a subsequent IAAC claim. *Id.* Accordingly, under the facts presented here, we conclude that Petitioner must prove how Appellate Counsel's deficient performance caused actual prejudice.

### 2. Petitioner has not shown actual prejudice from Appellate Counsel's deficient performance

**{29}** Petitioner argues it is likely that, but for the errors of Appellate Counsel, the Court of Appeals would have reversed Petitioner's conviction. The State counters that even if Appellate Counsel had performed competently, Petitioner's conviction would not have been reversed on appeal and that Petitioner therefore did not suffer prejudice.

**{30}** The weight of evidence of prejudice is decided on a case-by-case basis. *See State v. Favela*, 2015-NMSC-005, ¶ 18, 343 P.3d 178. Petitioner maintains that but for Appellate Counsel's deficiencies, the result of his appeal would have been different for two reasons. Petitioner claims that he was convicted under an "improper" jury instruction and that Appellate Counsel prejudiced his appeal by raising this issue in a manner that precluded review by the Court of Appeals. Petitioner also claims the evidence at trial was insufficient to support a conviction for child abuse based on an endangerment theory. He insists that if Appellate Counsel had "fully argued these issues to the Court of Appeals and/or filed a timely petition for certiorari in this Court, it is reasonably probable that [Petitioner]'s sole conviction . . . would have been reversed and re-trial prohibited." We disagree with Petitioner and determine that Appellate Counsel's errors did not amount to actual prejudice in violation of Petitioner's constitutional right to an appeal.

### a. Appellate Counsel's failure to adequately raise a jury instruction issue did not prejudice Petitioner's appeal

**{31}** Petitioner maintains that his conviction was "based on a subsequently discredited theory of criminally negligent child abuse," that the corresponding jury instruction used at his trial was erroneous, and that Appellate Counsel "was so ineffectual that the Court of Appeals refused to address the claim." According to Petitioner, Appellate Counsel attempted to argue that the jury instruction used erroneously applied the civil negligence standard of "knew or should have known" to the foreseeability of risk to Child but was ineffective in presenting this argument to the Court of Appeals. Petitioner asserts that the "appeal certainly

would have turned out differently" but for Appellate Counsel's errors.

**{32}** Appellate Counsel's appellate brief acknowledged that the jury instruction error was not preserved at trial but failed to argue that the Court of Appeals could consider the issue under the fundamental error exception. *See* Rule 12-216(B) NMRA (1993). The Court of Appeals responded to the jury instruction issue and concluded, "[W]e find no error and will not address these claims further." *Lukens*, A-1-CA-30819, mem. op. ¶ 20. Petitioner concludes that he would have prevailed if Appellate Counsel had fully articulated this issue to the Court of Appeals. We disagree. Appellate Counsel's failure to raise fundamental error did not prejudice Petitioner's appeal because the jury instruction was not erroneous.

**{33}** We again look to *Strickland* to assess the validity of Petitioner's claim of prejudice. We do not need to assess whether Appellate Counsel adequately raised the jury instruction issue nor whether the brief's shortcomings concerning this issue amounted to deficient performance. As previously discussed, we "dispose of [this] ineffectiveness claim on the ground of lack of sufficient prejudice" and avoid analysis of deficient performance altogether. *Plouse*, 2003-NMCA-048, ¶ 13. Under the second prong of the *Strickland* test, we review Petitioner's claim of prejudice.

**{34}** A petitioner suffers prejudice when there is a reasonable probability that, had it not been for a deficient performance by appellate counsel, the petitioner would have prevailed on direct appeal. *Smith*, 528 U.S. at 285. Applied to this case, Petitioner must show that the use of the challenged jury instruction was fundamental error that would have required reversal if Appellate Counsel had properly raised the issue on direct appeal. Petitioner fails to meet his burden.

**{35}** At Petitioner's trial, jury instruction 5 tracked the negligent child abuse instruction, UJI 14-602 NMRA (2000, withdrawn April 3, 2015), and specified the elements of reckless disregard, stating in pertinent part,

> To find that David Lukens, Jr. acted with reckless disregard, you must find that David Lukens, Jr. *knew or should have known* the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child].

(Emphasis added.) Appellate Counsel's brief in chief specifically asserted that UJI 14-602 was erroneous because the instruction included certain language that this Court had questioned in prior cases. *See, e.g.*, *State v. Schoonmaker*, 2008-NMSC-010, ¶ 45, 143 N.M. 373, 176 P.3d 1105 ("UJI 14-602 on negligent child abuse appears to be somewhat inconsistent by using a 'should have known' standard and then later requiring that the defendant have 'disregarded [the] risk and . . . [been] wholly indifferent to the consequences.'" (alterations and omission in original)), *abrogated in part by State v. Consaul*, 2014-NMSC-030, ¶¶ 37-38, 332 P.3d 850 (acknowledging confusion between

9

criminally negligent and reckless child abuse and requiring only recklessness, the conscious disregard of risk, for UJI 14-602).

**{36}** Petitioner argues that the language of the instruction was subsequently changed. The thrust of Petitioner's argument is that later changes to the instruction demonstrate that errors were present in the prior version. To the contrary, this Court has never found UJI 14-602 to be legally insufficient. *See State v. Lucero*, 2017-NMSC-008, ¶ 32, 389 P.3d 1039 (reinforcing the presumption that the district court's reliance on UJI 14-602 was conclusive of the jury having been properly instructed). This Court has also recognized the presumption that a uniform jury instruction correctly states the law. *State v. Johnson*, 2001-NMSC-001, ¶ 15, 130 N.M. 6, 15 P.3d 1233. We disagree with Petitioner's assertion that the trial court's use of the jury instruction was erroneous. Even if Appellate Counsel raised fundamental error regarding the jury instruction, the Court of Appeals would have concluded that the instruction was proper. Petitioner's conviction would not have been reversed. Because the jury instruction was proper, no prejudice resulted when Appellate Counsel failed to raise fundamental error.

**{37}** Petitioner's discussion of the alleged jury instruction error relies heavily on *Consaul*, 2014-NMSC-030, a case decided one full year after the Court of Appeals mandate in Petitioner's appeal. *Consaul* cannot support error in this case because *Consaul* was not the law at the time of Petitioner's direct appeal. Under *Strickland*, we must evaluate Appellate Counsel's conduct from Appellate Counsel's perspective at the time and without "'the distorting effects of hindsight.'" *Lytle*, 2001-NMSC-016, ¶ 26 (quoting *Strickland*, 466 U.S. at 689). An attorney's assessment of the merits of an issue depends on the law at the time. *People v. Weninger*, 686 N.E.2d 24, 27-28 (Ill. App. Ct. 1997) ("Representation based on the law prevailing at the time of trial is adequate, and [*trial*] counsel is not incompetent for failing to accurately predict that existing law will change." (emphasis added)). The same principles apply for claims of inadequate representation by appellate counsel on direct appeal. *People v. Barnard*, 470 N.E.2d 1005, 1012 (Ill. 1984) ("We have tested the performance of [the] defendant's counsel, both at trial and on appeal, by the standards adopted by the Supreme Court in *Strickland*."). Appellate Counsel for Petitioner could not claim error based on case law that did not exist.

**{38}** Even if *Consaul* was available at the time of Petitioner's appeal, the facts in *Consaul* are distinguishable from Petitioner's case. In *Consaul*, this Court reversed a conviction for negligent child abuse causing great bodily harm, holding that the jury should have received separate jury instructions on intentional child abuse and negligent child abuse. *Consaul*, 2014-NMSC-030, ¶¶ 23, 26. In Petitioner's case, all charges of intentional child abuse were abandoned, and the jury only considered negligent child abuse. *Consaul* could not affect the outcome of Petitioner's appeal.

**{39}** Finally, the new version of the jury instruction reflecting the change referred to by Petitioner did not become effective until April 3, 2015, nearly five years after Petitioner's September 2010 sentencing and nearly two years after the August 2013 mandate in

Petitioner's direct appeal. *See* UJI 14-615 NMRA. By order of this Court, the new instruction, UJI 14-615, applies to "cases filed or pending on or after April 3, 2015," and has no application in Petitioner's case.

**{40}** Because Petitioner bases his argument on a future jury instruction and future case law, we cannot agree that Appellate Counsel's failure to raise fundamental error in the trial court's use of an allegedly erroneous jury instruction caused Petitioner prejudice. Our review of the record indicates that Appellate Counsel argued for reversal of Petitioner's conviction based on the law as it existed at the time of Petitioner's direct appeal. Appellate Counsel did not cause Petitioner prejudice for failing to predict the ruling of *Consaul* or subsequent changes in jury instructions.

> **b.     Appellate Counsel's failure to challenge the sufficiency of the evidence did not constitute deficient performance, nor did it prejudice Petitioner**

**{41}** Petitioner's final argument is that the State did not present sufficient evidence to support a theory of child abuse by endangerment. Petitioner claims that by failing to challenge sufficiency of the evidence, Appellate Counsel performed deficiently and Appellate Counsel's performance prejudiced Petitioner. Petitioner states that "the appellate courts would have ruled in [his] favor had [A]ppellate [C]ounsel not utterly failed to brief this issue in the Court of Appeals" or failed to apply for certiorari in this Court. The State argues against such a finding of prejudice because "no error occurred in the trial below" where "more than sufficient evidence" supported child abuse by endangerment.

**{42}** We review a jury's verdict to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. The evidence "is viewed in the light most favorable to the guilty verdict." *State v. Ramirez*, 2018-NMSC-003, ¶ 6, 409 P.3d 902 (internal quotation marks and citation omitted). This Court will not substitute its judgment for that of the jury so long as a rational jury could have found the essential facts required for a conviction beyond a reasonable doubt. *Id.*

**{43}** "Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health." Section 30-6-1(D)(1) (2005). Jury instruction 5 stated,

1.     David Lukens, Jr. caused [Child] to be placed in a situation which endangered the life or health of [Child];
2.     [David Lukens, Jr.] acted with reckless disregard . . . ;
3.     David Lukens, Jr.'s actions or failure to act resulted in great bodily harm to [Child], to wit: rib fracture;
4.     [Child] was under the age of 18;

5.      This happened in New Mexico on or between the 11th day of September, 2005 and the 5th day of December, 2005.

We conclude from the following discussion that the State introduced sufficient evidence at trial for a rational jury to find each of the essential elements to prove Petitioner guilty of child abuse by endangerment beyond a reasonable doubt.

**{44}**    Child's mother testified about Child's fragility when he was born. When asked if the hospital sent Child home with any particular warning about Child being fragile, she responded, "They constantly spoke to us about how fragile babies can be. They didn't specifically say, 'Be very, very careful,' or anything like that, but you would think anybody would know that babies are fragile." She also testified that Petitioner "was particularly rough" with Child a "couple of times," stating that "he held him kind of roughly like you would—you know when a baby cries, and you would gently, you know, shake them and say, 'Come on now. Stop crying.' He was very rough when he did that, and I did mention it to him."

**{45}**    When asked about the significance of the location of Child's rib fractures, one of the State's medical experts testified, "It's significant in that in my radiology literature, that in the setting of squeezing of the chest, fractures tend to occur along the side and along the back, as in [Child]." The expert added that rib fractures are not common because "[t]he ribs in children are very elastic." "They bend before they actually break, . . . and so we don't see rib fractures, commonly, at all." When the State asked another medical expert whether Child's rib fractures could be a result of "normal handling," the expert answered, "Not unless you have an underlying bone problem, which, in my opinion, [Child] did not have."

**{46}**    Evidence introduced at trial included the video recording of the investigating detective's interview with Petitioner. During the interview Petitioner stated, "I did get mad at [Child] . . . ; I did squeeze him." The jury watched the recording of the interview and heard Petitioner say, "I really, really, really got mad" at Child. Petitioner also said that he "may have used excessive force." And while being interviewed by the detective, Petitioner also stated, "I'm digging a grave here."

**{47}**    When confronted with the statements he gave to police, Petitioner explained that he was mad at himself, not mad at Child. "'Contrary evidence . . . does not provide a basis for reversal because the jury is free to reject [a d]efendant's version of the facts.'" *State v. Galindo*, 2018-NMSC-021, ¶ 12, 415 P.3d 494 (quoting *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829). Because the factfinder determines credibility, the jury was free to disbelieve Petitioner. *See State v. Smith*, 2001-NMSC-004, ¶ 16, 130 N.M. 117, 19 P.3d 254.

**{48}**    The trial court found that endangerment could be based either on Petitioner's handling of Child while angry or on the injuries themselves or on Petitioner's failing to alert medical authorities. Based on Petitioner's statements to the detective or on the testimony at

12

trial, a rational jury could have found the essential facts required to convict Petitioner of endangerment of Child beyond a reasonable doubt. We hold that Appellate Counsel's failure to argue insufficient evidence of endangerment did not constitute deficient performance and did not prejudice Petitioner because the State's evidence was sufficient to prove endangerment.

**c.      We reject Petitioner's specific claims concerning Appellate Counsel's failure to challenge insufficient evidence of endangerment**

**{49}**      Petitioner makes the following three assertions concerning specific claims of unchallenged insufficiency of the State's evidence that he endangered Child: (1) evidence of endangerment may not rely on actual injuries, (2) evidence of endangerment is evidence of the forseeability of substantial risk of injury, and (3) Petitioner's failure to get medical attention for Child is not evidence of endangerment.

**{50}**      Petitioner relies on four recent cases, decided one to four years after the Court of Appeals mandate that affirmed his conviction, to support his specific claims of unchallenged insufficient evidence that he endangered Child. *See Lucero*, 2017-NMSC-008; *State v. Nichols*, 2016-NMSC-001, 363 P.3d 1187; *Consaul*, 2014-NMSC-030; *State v. Garcia*, 2014-NMCA-006, 315 P.3d 331. Appellate Counsel did not have the benefit of the cases Petitioner cites. As we have discussed, Petitioner errs in making IAAC claims reliant on case law that was unavailable to Appellate Counsel at the time of the appeal. Nevertheless we address Petitioner's three assertions concerning unchallenged insufficiency.

**{51}**      Petitioner contends that child abuse by endangerment must be established "without reliance on any resulting injuries." This Court has stated, "Whether a defendant's conduct creates a substantial and foreseeable risk of harm is what determines whether the child was endangered." *State v. Chavez*, 2009-NMSC-035, ¶ 2, 146 N.M. 434, 211 P.3d 891. Endangerment does require evidence of the risk of harm, but that does not exclude evidence of actual harm—such as the medical experts' testimony at trial concerning Child's actual injuries—as irrelevant. Actual harm may provide circumstantial evidence of the risk, as it did here. We maintain that other testimony at trial established that Petitioner's conduct was sufficient evidence of the foreseeable risk of harm to Child.

**{52}**      In arguing that child abuse by endangerment must be foreseeable, Petitioner implies that a reasonable person could not have foreseen that Petitioner's act of squeezing Child with excessive force would result in harm to Child. Petitioner asserts that there was no evidence that Petitioner's handling of Child while angry and sleepless created a substantial and foreseeable risk of harm to Child and that his "own act of squeezing [Child] could not have formed the basis of his child endangerment conviction." But the jury heard the testimony of Child's mother and Petitioner's own explanation of how he might have injured Child by using "excessive force." Juries may "'use their common sense to look through testimony and draw inferences from all the surrounding circumstances.'" *State v. Phillips*, 2000-NMCA-028, ¶ 14, 128 N.M. 777, 999 P.2d 421 (citation omitted). The fragility of infants is common

13

knowledge, and the risk of harm is substantial and foreseeable if infants are handled improperly. A rational jury could conclude that handling an infant with excessive force creates a substantial and foreseeable risk of harm. In this light, the evidence was sufficient for a jury to find Petitioner guilty of endangerment of Child.

**{53}** Petitioner claims the State did not establish that failing to get medical attention for Child amounted to endangerment. But the State presented evidence at trial of three distinct theories of endangerment, and the trial court agreed in finding that endangerment could be based either on Petitioner's handling of Child while angry, on the injuries themselves, or on failing to alert medical authorities. The trial court stated, "the State has made out a prima facie case upon which a reasonable juror could find that child abuse occurred and the defendant was the one that may have committed the act, causing injury, and depriving Child of needed medical attention or care at that time." Regardless of whether the State established how the failure to seek medical attention endangered Child, the jury had two other theories of endangerment it could consider. Accordingly, even if the State did not establish the connection between medical care and endangerment, Petitioner's argument fails to establish insufficient evidence of endangerment.

### d.    Appellate counsel discretion determines which arguments to advance

**{54}** We recognize Appellate Counsel's failure to make a sufficiency of the evidence argument, theoretically, as a tactical decision based upon strength of the evidence presented at trial and the resultant weakness of the sufficiency argument on appeal. Appellate Counsel had discretion to argue the most meritorious issues on appeal. An insufficient evidence argument is not "so plainly meritorious that it would have been unreasonable to winnow it out" of the appellate brief. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). Counsel has discretion to choose which nonfrivolous arguments to advance on appeal. *Welch v. Workman*, 639 F.3d 980, 1012-1013 (10th Cir. 2011). Appellate attorneys are wise to focus on the strongest issue rather than raise every viable issue.

> "[The] weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy . . . . [E]very weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point—'just in case'—is likely to serve her client less effectively than one who concentrates solely on the strong arguments."

*LaFevers v. Gibson*, 182 F.3d 705, 722 (10th Cir. 1999) (alterations and omission in original) (quoting *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989)). Contrary to Petitioner's arguments, Appellate Counsel's failure to discuss the sufficiency of the evidence was not deficient and did not prejudice Petitioner.

### III.    CONCLUSION

**{55}** Petitioner complains he suffered from ineffective assistance of appellate counsel and was deprived of the constitutional right to appeal his conviction. We conclude otherwise. Petitioner was afforded his appeal of right, the district court had substantial evidence to support its findings, and Appellate Counsel's shortcomings did not prejudice Petitioner in this case. Petitioner is not entitled to a new appeal. Petitioner is not entitled to a reversal of his conviction.

**{56}** For the foregoing reasons, we affirm the district court's denial of the petition for writ of habeas corpus.

**{57}    IT IS SO ORDERED.**

_____
**GARY L. CLINGMAN, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**