J-S27011-20
J-S27012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAKIM BLATCH | : | |
| | : | |
| Appellant | : | No. 2214 EDA 2019 |

Appeal from the PCRA Order Entered July 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007790-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAKIM BLATCH | : | |
| | : | |
| Appellant | : | No. 2215 EDA 2019 |

Appeal from the PCRA Order Entered July 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007792-2014

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 06, 2020**

Appellant, Hakim Blatch, filed two separate notices of appeal from the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Appellant asserted that ineffective assistance of counsel resulted in convictions at Docket Number CP-51-CR-0007790-2014,

---

[*]  Former Justice specially assigned to the Superior Court.

corresponding to Superior Court Docket Number 2214 EDA 2019, and CP-51-CR-0007792-2014, corresponding to Superior Court Docket Number 2215 EDA 2019. Appellant raised identical issues and filed the same brief in both appeals. As such, pursuant to Pa.R.A.P. 513, we have consolidated these appeals *sua sponte*, and address them concurrently. After careful review, we affirm.

The pertinent facts, as found by the trial court, were summarized in a memorandum filed by a prior panel of this Court:

> In early January 2014, R.M. was working as a pizza delivery driver. At some point in early January 2014, R.M. was driving his vehicle when he noticed a woman, later identified as Kimberly Cook, walking down the street near 54th Street and Lansdown[e] Avenue in Philadelphia. R.M. honked his horn at Cook and pulled over his vehicle to talk with her, hoping to exchange phone numbers and meet with her later. At this time, Cook identified herself as "Zah." [fn1] While R.M. and Cook were talking and exchanging phone numbers, Cook noticed that R.M. had an amount of U.S. currency on the passenger side floor of his vehicle.
>
> > fn. 1 Cook was also identified as "Zamirah Johnson."
>
> After meeting R.M., Cook told Appellant, her boyfriend, about the meeting and asked Appellant to rob R.M. Appellant agreed and arranged to have co-defendants Quadir Jeffries and Alonzo Wallace aid in the robbery. The plan was for Cook to accompany R.M. to his house, while Appellant, Wallace, and Jeffries followed in a separate car. Cook would then open the door for Appellant, Wallace, and Jeffries to enter and rob R.M.

On January 18, 2014, Cook called R.M. under the false pretense of meeting R.M. to have sex. Cook arranged to have R.M. pick her up near 56th Street and Lansdown[e] Avenue later that evening. Cook, Appellant, Wallace, and Jeffries then headed to 56th Street and Lansdown[e] Avenue in Jeffries' car. Also with them was Cook's friend, Crystal Collins. Cook wished to have Collins present with her, as Cook did not know R.M. and was nervous about meeting him alone. Appellant, Jeffries, and Wallace waited in Jeffries' car around the corner from where R.M. was waiting while Cook and Collins exited the vehicle and met with R.M.

R.M. arrived at the corner of 56th Street and Lansdown[e] Ave[nue] and waited for approximately 45 minutes before Cook arrived, accompanied by Collins. R.M. had both women get into his car and drove to his apartment on the 4200 block of North 7th Street in Philadelphia. While R.M. was driving, Cook was texting Appellant, providing directions as to where R.M. was driving and the address at which they stopped.

Upon arriving at R.M.'s apartment, R.M., Cook, and Collins went inside and had a conversation about sex. While they were talking, Appellant, Jeffries, and Wallace arrived at R.M.'s apartment, finding the outside door locked, and Appellant texted Cook to tell her to open the door. At this time, Cook asked if she could go outside to smoke a cigarette, and R.M. gave her the keys to his car, telling her that he had a lighter inside of it. Cook then went downstairs and opened the door for Jeffries and Wallace to enter the building and directed them to R.M.'s bedroom. Jeffries and Wallace entered the building and went upstairs while Cook went to the street corner, throwing away R.M.'s keys, where she was later joined by Collins. As Collins left the building, Appellant entered.

After letting Cook out of the apartment and watching her go down the steps, R.M. closed his door, only to reopen it and see men rushing up the steps. R.M. attempted to close his door, but Jeffries and Wallace

kicked the door in, forcing R.M. to the ground. While R.M. was on the ground, Jeffries and Wallace pistol whipped him with handguns while demanding that R.M. tell them where the money was, and threatening to shoot him. Appellant joined Jeffries and Wallace while they were beating R.M. The assailants rummaged through R.M.'s room looking for cash, and found a cookie tin with marijuana and cash. They failed to find the large sum of cash that was in R.M.'s pocket.

M.S., who lived in the apartment across from R.M., heard the commotion and opened his door to see what was happening. M.S. saw two men standing in R.M.'s broken doorway. Wallace, noticing M.S. open the door, turned towards M.S. and shot at him. Closing the door as Wallace turned, M.S. ducked and was shot through the door, with the bullet striking his left arm. Had M.S. not ducked, the bullet would have struck M.S. in his heart. As the three robbers left the apartment building, Jeffries fired a shot at a security camera inside the front door.

Hearing the assailants leave, R.M. checked on M.S. while M.S. called the police. Police responded and were let into the house by R.M. M.S. and R.M. were transported to Temple University Hospital for medical treatment.

Police recovered one nine-millimeter fired cartridge case and one 40 caliber fired cartridge case from the first floor hallway of the home. Police also recovered the video tapes of the home surveillance system that covered the front entryway into the building. The inside camera appeared to be damaged by a gunshot. After his release from the hospital, M.S. found the 40 caliber bullet that had struck him in his room and gave that bullet to [his] landlord, who turned it over to police.

Later on the night of the shooting, Appellant, Cook, Collins, Wallace, and Jeffries all met at a speakeasy on Jackson and Taney Streets. While the group was together, they discussed Wallace shooting M.S. and

- 4 -

Jeffries shooting out the camera. At this time, Appellant stated that Wallace and Jeffries had already pistol-whipped R.M. by the time Appellant got upstairs. Jeffries gave Collins some money at the speakeasy while Appellant gave Cook some marijuana.

Police provided the media with a copy of the surveillance video, in an effort to get public help in identifying the robbers. Deputy Sheriff Martin Samuels, who knew both Appellant and Jeffries from his time patrolling the area, watched the video of the assault and identified Appellant and Jeffries as two of the perpetrators. Police also conducted an analysis of the phone R.M. had used to contact Cook, and from that, were able to identify Cook as a suspect in [this] case. Police put Cook's photo in a photo array and showed it to R.M., who identified Cook as the person he stopped on the street and who set him up for the robbery.

Jeffries was arrested on February 23, 2014. Police made several efforts to locate Appellant and Cook in February and March 2014, but were unable to locate them. Appellant and Cook were arrested on June 4, 2014. Wallace was arrested on June 11, 2014. After her arrest, Cook provided a statement to police, detailing her involvement in the robbery. Cook also identified Appellant, Wallace, and Jeffries to police. A cell phone tower analysis of the location of Appellant's cell phone on the night of the robbery corroborated Cook's statement to the police regarding the events surrounding the robbery.

***Commonwealth v. Blatch***, 169 A.3d 1157, 916 EDA 2016 (Pa. Super. filed April 12, 2017) (unpublished memorandum) (quoting Trial Court Opinion, 6/15/16, at 2–7 (internal citations and some internal footnotes omitted)).

On December 10, 2015, a jury found Appellant guilty of aggravated assault of R.M, robbery, and burglary (Docket Number CP-51-CR-0007792-

2014);[1] and aggravated assault of M.S., criminal conspiracy, and carrying a firearm without a license, (Docket Number CP-51-CR-0007790-2014).[2] On February 2, 2016, Appellant was sentenced to an aggregate term of twenty-three to forty-six years of imprisonment.

On April 12, 2017, this Court affirmed the judgment of sentence. *Blatch*, 916 EDA 2016 (unpublished memorandum at *11). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on September 6, 2017. *Commonwealth v. Blatch*, 170 A.3d 1027, 195 EAL 2017 (Pa. filed September 6, 2017).

On October 26, 2017, Appellant filed a *pro se* PCRA petition challenging trial counsel's stewardship. On September 23, 2018, appointed counsel filed an amended petition claiming that trial counsel was ineffective for failing to object and request a mistrial when a law enforcement officer testified to Appellant's previous arrest for a domestic dispute and for failing to adequately meet and interview Appellant in preparation for trial. Amended Petition, 9/23/18, at 3–4.

On May 23, 2019, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intention to dismiss Appellant's petition without a hearing. Although

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 3701(a)(1)(ii), and 3502(a)(1), respectively.

[2] 18 Pa.C.S. §§ 2702(a)(1), 903, and 6106(a)(1), respectively.

he was represented by counsel, Appellant filed a *pro se* response to the court's Rule 907 notice. On July 12, 2019, the PCRA court entered an order dismissing Appellant's petition. This appeal followed.

Appellant raises two issues for appellate review:

> (1) Was trial counsel . . . ineffective by failing to object or request a mistrial when a sheriff testified that he arrested [Appellant] on a previous case?

> (2) Was trial counsel . . . ineffective for failing to adequately meet or interview [Appellant] in preparation for trial?

Appellant's Brief at 5.

When reviewing the denial of a PCRA petition, we consider "whether the PCRA court's determination is supported by the record and free from legal error." ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal quotation marks and citation omitted). Our standard of review is *de novo* as to the PCRA court's legal conclusions. ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

"With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). Moreover,

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quotation omitted).

Pursuant to the United States Supreme Court's decision of ***Strickland v. Washington***, 466 U.S. 668 (1984), and the Pennsylvania Supreme Court's decision in ***Commonwealth v. Pierce***, 527 A.2d 973, 975-977 (Pa. 1987), to prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove three elements:  1) the underlying claim has arguable merit; 2) counsel had no reasonable basis for his action; and, 3) the petitioner suffered prejudice as a result of counsel's action.  ***Brown***, 196 A.3d at 150. "If a petitioner fails to prove any of these prongs, his claim fails."  ***Spotz***, 84 at 311 (citation omitted).

Appellant first argues that trial counsel was ineffective for failing to join Appellant's co-defendant's counsel's objection and failing to request a mistrial in response to the following exchange between the Commonwealth and prosecution witness, Deputy Sheriff Martin Samuels ("Samuels"), a former Philadelphia Housing Authority police officer:[3]

> [Assistant District Attorney]:  In your six years that you were working Wilson Park, at what -- did you interact with [Appellant]?
>
> [Samuels]:  I locked him up for -- domestic abuse.
>
> [Co-Defendant's Counsel]: Objection.
>
> [The Court]:  Sustained.  Ladies and gentlemen of the jury, please disregard that last statement.  Don't consider that in any way.

---

[3] At the time of trial, Samuels was employed as a deputy sheriff with the city of Philadelphia.

N.T., 12/7/15, at 33–34.

Appellant asserts that this allegation of ineffectiveness is meritorious because counsel's failure to object and request a mistrial resulted in waiver of appellate review of whether a mistrial was warranted. *See Commonwealth v. Irvin*, 134 A.3d 67, 75 n.12 (Pa. Super. 2016) (when a co-defendant preserves an issue by objecting, the defendant waives the issue unless he joins the objection). Appellant also avers that the statement concerning his prior arrest was prejudicial in that the jury could infer from the testimony that he "has prior contacts with the criminal justice system and has a tendency to commit crimes." Appellant's Brief at 11. Finally, Appellant maintains that there is a reasonable probability that the outcome of the trial would have been different "but for trial counsel's failure to object to the repeated assertions from the officers." *Id.* Appellant points out that he was not identified in court by the victims and that the evidence implicating him in the crime emanated from "a dubious witness [Ms. Cook] and a less than clear video." *Id*. at 12.

The PCRA court acknowledged counsel's failure to object but declined to find that she was ineffective based upon the following rationale:

> [I]t is true that defense counsel failed to object to the inadmissible evidence regarding [Appellant's] prior arrest. However, because counsel for the co-defendant did object, the [c]ourt immediately sustained an objection to the improper testimony and immediately directed the jury to completely disregard it. Moreover, [Appellant] was not prejudiced by trial counsel's failure to act because the record establishes that a mistrial was not required for several reasons.
>
> First, the improper testimony clearly was not intentionally elicited by the Commonwealth. Samuels had identified

- 9 -

[Appellant] as one of the perpetrators of the robbery and assault here at issue from surveillance video of the crime posted on the web by the Philadelphia police. The Commonwealth needed to establish how Samuels was able to make the identification. Towards that end, the prosecutor established that Samuels had previously worked for 20 years as a Philadelphia Housing Authority Police Officer and was familiar with [Appellant] from Samuels' community policing for six years at the Wilson Park Projects. Unfortunately, when asked only whether he did community policing in the area, and whether he had any interactions with [Appellant], Samuels volunteered that he had arrested [Appellant] for domestic abuse. Second, the [c]ourt's curative instruction was immediate, forceful and direct: "[P]lease disregard that last statement. Don't consider that in any way." In addition, rather than exploiting the reference, the prosecutor clarified that Samuels and [Appellant] had interacted during the community policing done by Samuels. Finally, no aspect of the instant case involved domestic violence.

Under these circumstances, Samuel's momentary reference to a prior domestic abuse arrest did not have the unavoidable effect of denying [Appellant] a fair trial. **Accordingly, if trial counsel had objected and moved for a mistrial, the motion would have been properly denied**. Because [Appellant] was not prejudiced by trial counsel's inaction, counsel's failure to act did not deprive [Appellant] of effective assistance of counsel.

PCRA Court Opinion, 11/13/19, at 8–9 (emphasis added) (record references and citations omitted).

In analyzing this claim under the three-part *Strickland* test, we agree that the first prong of the test has been met, *i.e.,* the underlying claim has arguable merit. Evidence of a defendant's prior arrest is generally inadmissible because it may lead the jury to infer past criminal conduct by the defendant. *Commonwealth v. Williams*, 660 A.2d 1316, 1321 (Pa. 1995) (citation omitted). However, turning to the third prong of the test—prejudice

as a result of counsel's failure to object to Samuel's testimony and/or request a mistrial, Appellant failed to meet his burden.[4]

There are multiple factors to examine when a witness has proffered improper testimony. Although a mistrial may be warranted if a juror could reasonably infer from the testimony presented that the accused had engaged in prior criminal activity, *Commonwealth v. Zabala,* 449 A.2d 583, 586 (Pa. Super. 1982), not all references to prior criminal activity require a mistrial unless the record indicates that prejudice resulted from the reference. *Commonwealth v. Blystone,* 725 A.2d 1197, 1204–1205 (Pa. 1999). "The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Guilford,* 861 A.2d 365, 370 (Pa. Super. 2004) (citation omitted). We also look to see if the Commonwealth attempted to exploit the information. *Commonwealth v. Valerio,* 712 A.2d 301, 304 (Pa. Super. 1998). As such, there is no *per se* rule requiring a new trial when a defendant's prior criminal activities are referenced. *Id.* at 303. Furthermore, when the trial court provides cautionary instructions to the jury "[t]he law presumes that the jury will follow the

_____

[4] Neither the PCRA court nor this Court evaluated the second prong of the *Strickland* test—whether trial counsel had a reasonable basis for her alleged inaction. The PCRA court denied Appellant's PCRA petition without a hearing; therefore, there is no testimony from trial counsel explaining her strategic trial decisions or describing her trial preparation.

instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001) (citation omitted).

Applying these criteria to the challenged testimony in the instant case, the PCRA court concluded that Samuel's mention of Appellant's prior arrest did not rise to the level of depriving Appellant of a fair and impartial trial, and, therefore, no grounds for a mistrial existed. Although Samuels' testimony alerted the jury that Appellant had some criminal history,[5] the PCRA court recalled that because Appellant's co-defendant's counsel instantly lodged an objection, the court immediately cautioned the jury to disregard Samuel's statement that he arrested Appellant.

The PCRA court then observed the Commonwealth did not intentionally elicit the testimony. There was a pretrial discussion wherein the trial court voiced concern regarding any testimony from Samuels indicating that he knew Appellant from other unlawful activity. The prosecutor stated:

> I already instructed [Samuels]. He arrested [Appellant] for a domestic violence incident and knew him through other domestic violence incidents as well. I instructed him that he can't testify to the arrest unless questioned upon the defense. I specifically told him not to say that in his direct examination.

N.T., 12/1/15, at 24. Obviously, Sheriff Samuels did not heed the prosecutor's instruction; however, the PCRA court noted that the Commonwealth, rather

---

[5] We note that **one** witness made **one** reference to Appellant's prior arrest. Thus, Appellant's assertion that trial counsel failed to object to "repeated assertions from the officers," Appellant's Brief at 11, has no factual basis.

- 12 -

than misusing the testimony of Appellant's arrest, clarified that the sheriff knew Appellant in a benign context from his tenure as a Housing Authority officer. N.T., 12/7/15, at 33–34; 42–43.

Finally and significantly, the PCRA judge, who also presided over the Appellant's trial, stated affirmatively that if Appellant's counsel had requested a mistrial, he would not have granted it. PCRA Court Opinion, 11/13/19, at 9. This determination was based upon the court's assessment that Appellant was not denied a fair trial because of counsel's failure to object to Sheriff Samuel's statement. *Id.*

We do not discern any legal error in the PCRA court's conclusion. In view of these circumstances, the PCRA court correctly determined that a mistrial was not warranted, and Appellant was not deprived of a fair trial. Therefore, Appellant has not demonstrated that he was prejudiced by counsel's inaction and he is not entitled to relief on this claim of ineffectiveness. *See Commonwealth v. Johnson*, 815 A.2d 563, 576 (Pa. 2002) ("As there is no merit to [the appellant's] contention that he was entitled to a mistrial as a result of this incident, counsel was not ineffective for failing to request one."); *see also Commonwealth v. Tilley*, 780 A.2d 649, 653 (Pa. 2001) (counsel will not be deemed ineffective for failing to raise a meritless claim).

Appellant's second allegation of ineffectiveness assails counsel's trial preparation. Appellant's Brief at 12. The PCRA comprehensively described and analyzed the contours of this claim:

> [Appellant] claims that the [c]ourt erred in finding "that trial counsel was not ineffective for failing to perform pre-trial investigation." In his Amended Petition, [Appellant] specifically contended that counsel failed to adequately meet and interview defendant to prepare for trial. [Appellant] claimed that counsel only met with him two times for about five minutes each. [Appellant] argued that as a result, counsel (1) failed to follow up with witnesses helpful to the defense that had been identified by [Appellant]; (2) failed to present evidence showing that a cell phone that had been alleged to have belonged to [Appellant] was actually not registered to [Appellant] or anyone connected to him; (3) failed to uncover impeachment evidence regarding Cook; and (4) failed to uncover other unspecified evidence that could have assisted in the defense. This claim is without merit.
>
> * * *
>
> 1. *Failure to Follow Up with Witnesses*
>
> [Appellant] specifically identified two witnesses whom he claims trial counsel should have presented at trial. First, he averred that Crystal Collins [the woman who accompanied accomplice Cook to R.M.'s apartment] knew that [Appellant] was not present at the scene of the crime. In addition, he claimed that the ex-boyfriend of co-conspirator Cook could explain how Cook ended up with [Appellant's] cellphone at the time of the crime. However, [Appellant] never proffered any evidence that these witnesses were available and prepared to testify on [Appellant's] behalf, and that their testimony actually would have been favorable to [Appellant]. As a result, the PCRA [c]ourt properly rejected the claims regarding these witnesses without a hearing. ***See Commonwealth v. Pursell****, 724 A.2d 293, 306 (Pa. 1999), cert. denied,* 528 U.S. 975 (1999) (to establish trial counsel's ineffectiveness for failing to call witnesses, defendant must show, *infer alia,* "that the witnesses were available and prepared to cooperate and would have testified on [Appellant's] behalf and "that the absence of the testimony prejudiced the [Appellant]").

2. *Failure to Present Evidence Regarding Cellphone Registration*

[Appellant] also contended that due to trial counsel's inadequate preparation, she failed to present evidence that a cellphone number attributed to him at trial actually was not registered to him or anyone connected to him. However, [Appellant] never identified any such evidence nor proffered how he could establish this claim at a hearing. In fact, the phone records presented at trial established that the billing name used for the phone in question was "Hakim Blatch," [Appellant's] name. N.T. 12/8/2015 at 185-186. Absent some offer of proof, defendant was not entitled to a hearing on this issue. ***See Commonwealth v. Jones***, 811 A.2d 994, 1003 (Pa. 2002) (claims of ineffective assistance of counsel are not self-proving and undeveloped claims are insufficient to prove entitlement to relief).

3. *Failure to Uncover Impeachment Evidence Regarding Cook*

[Appellant] argued that additional investigation would have uncovered "impeachment evidence to be used against Cook." However, Appellant nowhere specified what such impeachment evidence was, and never proffered any evidence to support this claim. Therefore, it was properly rejected without a hearing. ***See Jones***, 811 A.2d at 1003.

4. *Failure to Uncover Other Evidence*

[Appellant] also contends generally that trial counsel's failure to investigate somehow undermined the defense. He states, "[T]he possibilities of what could have occurred with a proper investigation are endless." This kind of vague assertion, which leaves the PCRA [c]ourt to guess what [Appellant] is claiming, did not entitle [Appellant] to a hearing.

5. *Prejudice*

Finally, [Appellant] has completely failed to aver any defects in counsel's investigation that would give rise to a reasonable probability that the outcome of the trial would have been different had the investigation been done. As this [c]ourt found in rejecting [Appellant's] weight of the evidence claim on [Appellant's] direct

- 15 -

appeal, the evidence of [Appellant's] guilt in this case was overwhelming. It included surveillance video depicting [Appellant], testimony from a co-conspirator confirming [Appellant's] involvement, testimony from both victims, and cellphone analysis conducted on [Appellant's] cellphone. *Id.* Nothing averred by [Appellant] in the Amended Petition undermines confidence in the outcome of this case.

Accordingly, [Appellant's] claim of ineffective assistance of counsel premised upon counsel's failure to adequately meet with and interview [Appellant] was properly rejected by the PCRA court. No relief is due.

PCRA Court Opinion, 11/13/19, at 9–12 (record references omitted).

On appeal, Appellant offers that trial counsel was ineffective because he saw "counsel one time in court before trial and then one time just before trial for about five (5) minutes." Amended PCRA Petition, 9/23/18 at 5; Appellant's Brief at 12. Appellant pursues this allegation of ineffectiveness under two theories. Appellant first contends that trial counsel's failure to prepare adequately for trial represented *per se* ineffectiveness under the United States Supreme Court decision in **United States v. Cronic**, 466 U.S. 648 (1984). In **Cronic**, the Supreme Court recognized that there are limited circumstances, for example, the complete denial of counsel, which are so likely to prejudice the accused that the cost of litigating their effect on a particular case is unjustified and prejudice upon collateral review is presumed. **Id.** at 658–659. Application of the **Cronic** presumption, however, is limited to situations where counsel's actions cause a "total failure" in the relevant proceedings. **Commonwealth v. Fink**, 24 A.3d 426, 432 (Pa. Super. 2011) (citation omitted); **see also Commonwealth v. Johnson**, 51 A.3d 237, 243

- 16 -

(Pa. Super. 2012) (*en banc*) (*Cronic* is limited to situations "where counsel has entirely failed to function as the client's advocate."). Indeed, in *Fink* our Court considered application of the principles set forth in *Cronic* and noted that:

> there have been only three circumstances under which this Court determined that counsel's conduct constituted a constructive denial of counsel warranting a presumption of prejudice: (1) where counsel failed to file a requested direct appeal; (2) where counsel failed to file a statement of matters complained of on appeal; and (3) where counsel failed to file a requested petition for allowance of appeal, thereby depriving the client of the right to seek discretionary review.

*Fink*, 24 A.3d at 432 n.3 (citing *Commonwealth v. Reed*, 971 A.2d 1216, 1225 (Pa. 2009)). As Appellant has not alleged that any of these three situations occurred herein, he cannot demonstrate that trial counsel was *per se* ineffective.

Moreover, Appellant's reliance on *Commonwealth v. Brooks,* 839 A.2d 245 (Pa. 2003), and *Commonwealth v. Brown*, 145 A.3d 196, 203 (Pa. Super. 2016), to support his position that counsel was *per se* ineffective is misplaced. In *Brooks*, the defendant claimed his counsel was ineffective for failing to meet with him at all before his capital trial; counsel confirmed that he could only recall having had one twenty-to-thirty minute telephone conversation with the defendant prior to trial. Brooks then waived his right to counsel, and the jury had found him guilty. On appeal, the Supreme Court vacated his conviction and death sentence, holding that counsel had been ineffective for failing to meet with his client "even once before his trial on

- 17 -

capital charges." **Brooks**, 839 A.2d at 250; **but see Johnson**, 51 A.3d at 243 (counsel's limited pretrial contact with his client was distinguishable from the attorney in **Brooks** who "failed to meet with his client at all."). The Court in **Brown** then clarified that the holding of **Brooks** applies only to those cases in which the Commonwealth was pursuing the death penalty. **Brown**, 145 A.3d at 198. As Appellant concedes that he met with trial counsel on two occasions and was not facing the death penalty at the time of trial, his *per se* ineffectiveness claim based on the jurisprudence of these cases is meritless.

Appellant also claims that trial counsel's scant trial preparation deprived him of effective representation under the **Strickland/Pierce** three-part test. Appellant reiterates his position that this claim has arguable merit because trial counsel failed to adequately prepare for his case or consider Appellant's theory of the case. Specifically, Appellant mentioned in a letter to current PCRA counsel the names of witnesses that he would have liked to call in his defense. Appellant states that if Crystal Collins was interviewed or called as a witness "she would know the truth that I was not there." Amended PCRA Petition, 9/23/18, at 6. Appellant also claims that an unnamed ex-boyfriend of Ms. Cook was with her the night of the crime and could explain how Cook ended up with Appellant's cell phone. **Id.**

Appellant, however, does not attest that Ms. Collins and Ms. Cook's ex-boyfriend were willing or even able to testify. Therefore, he cannot establish that his claim has arguable merit. **See Commonwealth v. Thompson**, 778

A.2d 1215, 1223 (Pa. Super. 2001) (where a defendant alleges ineffectiveness for not calling witnesses, he must offer proof that the witnesses were available and would have testified favorably).[6]

Even if this allegation of ineffectiveness had arguable merit, Appellant could not satisfy the prejudice prong of **Strickland**. Appellant asserts that there is a "strong probability that the outcome of the trial would have been different but for this omission by trial counsel." Amended Petition, 9/23/18, at 7. Specifically, Appellant claims that the testimony of Ms. Collins and Ms. Cook's ex-boyfriend would demonstrate to the jury that Appellant was not present during the crime. **Id.**

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate **Strickland** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial

---

[6] Appellant further suggests that trial counsel's performance fell below a reasonable standard because she neglected to pursue evidence of possible impeachment evidence against Ms. Cook and failed to investigate whether the at-issue cell phone number was connected to Appellant. Appellant's Brief at 14. As previously observed, see n. 4 supra, absent trial counsel's testimony, we cannot discern whether counsel had a reasonable trial strategy for not conducting a further investigation into these evidentiary matters. Such analysis, however, is not necessary to resolve whether counsel was ineffective, as we have decided that this claim does not have arguable merit. **See Spotz**, 84 A.3d at 311 (if a petitioner fails to prove any **Strickland** prongs, the ineffectiveness claim fails.).

under the circumstances of the case."  Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108–1109 (Pa. 2012).

Appellant does not support his averment that Ms. Cook and the unidentified ex–boyfriend would provide beneficial information regarding his presence at the crime scene.  Devoid of any actual facts, Appellant cannot demonstrate a probability that the outcome of the trial would have been different if the jury heard from these witnesses.  As the failure to investigate these witnesses was the basis for Appellant's averment that counsel's trial preparation was deficient, the PCRA court correctly determined that Appellant was not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20

- 20 -