This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37948**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PAUL IKARD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Judge**

Hector H. Balderas, Attorney General
Anne Minard, Assistant Attorney General
Santa Fe, NM

for Appellee

The Lahann Law Firm
Jeff C. Lahann
Las Cruces, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Following a jury trial, Defendant Paul Ikard was convicted of one count of sexual exploitation of a child, NMSA 1978, § 30-6A-3(A) (2016), and two counts of voyeurism of victims under the age of eighteen, NMSA 1978, § 30-9-20(A) (2007). On appeal, Defendant challenges his convictions, alleging that his confrontation and due process rights were violated, the district court erroneously admitted evidence, and the prosecution engaged in misconduct such that double jeopardy precludes retrial. We affirm.

**BACKGROUND**

**{2}**     Employees from Data Recovery Center (DRC), a company based in Cleveland, Ohio, contacted the local office of the Federal Bureau of Investigation (the FBI) regarding suspicious images found on a hard drive that Defendant sent in for service. Agent Daniel Pillitiere of the FBI recovered two hard drives from DRC: Defendant's crashed hard drive and a mirrored hard drive created by DRC that contained videos that DRC extracted from the crashed hard drive. DRC also sent the FBI the order form submitted to DRC containing Defendant's name, address, and specific instructions for the repair. The videos extracted from the crashed hard drive showed Defendant's face while setting up a camera, and his two minor children and their minor babysitters using the toilet, undressing, and showering.

**{3}**     Based off the billing and shipping addresses on the order form submitted to DRC, Agent Pillitiere shipped Defendant's original hard drive and the mirrored hard drive (containing the videos) to the FBI office in New Mexico. After receiving the hard drives, the Albuquerque office of the FBI determined that Defendant would not be charged with any federal crimes and referred the case to the Las Cruces Police Department (LCPD).

**{4}**     LCPD obtained a search warrant for Defendant's home. During their search, they discovered Velcro located in the vent above the toilet in the guest bathroom at Defendant's home. Police also recovered a small camera with the mating Velcro from the vent attached in a safe at the home. Defendant was taken into custody, where LCPD Detective Dustin Lockridge interviewed him. During this interview, Defendant admitted that he set up the camera in his home and sent the hard drive to DRC for repair. Defendant was charged with two counts of voyeurism of a child, contrary to Section 30-9-20; four counts of attempted voyeurism, contrary to Section 30-9-20 and NMSA 1978, § 30-28-1 (1963); and sexual exploitation of a child, contrary to Section 30-6A-3(A).

**{5}**     Prior to trial, Defendant moved to exclude testimonial statements made by DRC employees to Agent Pillitiere, as well as the videos and photographs extracted from Defendant's hard drive, arguing that the State had no witnesses with direct knowledge of the extraction of the videos and photographs, and that admitting this evidence would violate his confrontation and due process rights. Defendant also moved to exclude testimony from the State's expert witness because the State did not provide notice of its intent to call him as an expert witness. Lastly, Defendant moved to exclude the order form DRC provided to the FBI, arguing that it was inadmissible hearsay and that the State lacked proper foundation to have it admitted. The district court denied all three motions and overruled Defendant's renewed objections on these matters during trial.

**{6}**     At trial, the State presented evidence of the following facts pertinent to our analysis. Defendant admitted that at least one of the videos was taken in the guest bathroom at his home. He also positively identified himself as being on the video that the camera captured while being set up. Agent Weir, an investigator from LCPD, participated in the execution of the warrant to search Defendant's home and recognized

Defendant's guest bathroom as the same bathroom in the videos recovered from the hard drive. One of the victims, who was a minor and worked as a babysitter for Defendant, identified herself and one of Defendant's children on the videos and testified that some of the videos were recorded in Defendant's guest bathroom. Finally, Defendant's ex-wife identified Defendant's minor children in the videos.

**{7}** The jury convicted Defendant of one count of sexual exploitation of a child, and two counts of voyeurism of victims under eighteen. He appeals.

## DISCUSSION

**{8}** Defendant raises four issues on appeal: (1) his confrontation rights were violated because the State did not present any witness who actually performed work on his hard drive; (2) his due process rights were violated as a result of the State not providing notice prior to trial of its intent to call Agent Weir as an expert witness; (3) the DRC order form was hearsay and admitted in error; and (4) the prosecutor engaged in misconduct prior to and during trial.[1] We address each issue in turn.

## I.     Confrontation Clause

**{9}** Defendant raises multiple confrontation issues. Defendant contends that his right to confrontation was violated because (1) the enforcement of the *Touhy*[2] regulations precluded him from discovering the identities of the DRC employees and denied him the opportunity to cross-examine the employees who had direct knowledge related to recovering data from the hard drive; (2) Agent Weir testified to statements made by DRC witnesses who were not present at trial; and (3) enforcement of *Touhy* regulations prevented the DRC employees who actually worked on the hard drive and reported the suspicious images to the FBI from being identified. We assume without deciding that Defendant's confrontation rights were violated but hold that any error was harmless for the reasons discussed below.

**{10}** "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Lopez*, 2013-NMSC-047, ¶ 7, 314 P.3d 236 (internal quotation marks and citation omitted). The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend VI. This is interpreted to mean that a defendant has the "right to confront those who bear testimony against him." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (internal quotation marks and citation omitted). A statement is "testimonial if the declarant made the statement primarily intending to establish some fact with the understanding that the statement may be used in a criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435.

---

[1]We direct counsel to our Rules of Appellate Procedure, which require briefing to contain record proper citations. Rule 12-318(A)(3), (4) NMRA. Defendant's briefing is deficient in this regard. Thus, we feel it is necessary to remind counsel of the critical importance of adhering to the requirements of these rules. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 7, 433 P.3d 288.
[2]*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Pursuant to the Confrontation Clause, "an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted).

## A.    Any Violation of Defendant's Right to Confrontation Was Harmless

**{11}**    Defendant argues that the videos at issue were inadmissible without testimony from a witness with direct knowledge of the processes used to extract the videos from the hard drive, whether the images placed on the mirrored hard drive were identical to the original, crashed hard drive, and any metadata, including whether Defendant ever viewed the images. It is undisputed that the only testimony offered regarding the extraction of the videos from the original hard drive sent to DRC came from Agent Weir. Agent Weir's testimony was limited to a general explanation of how companies like DRC recover data from crashed hard drives. In essence, Defendant argues that, along with the opportunity to confront the investigating law enforcement agents, the Confrontation Clause also requires that he have the opportunity to challenge the processes and methods used by the unidentified DRC employees that originally flagged these images.

**{12}**    Assuming without deciding that Defendant's confrontation rights were violated by the absence of testimony from DRC employees, we conclude any error was harmless. A violation of the Confrontation Clause, by itself, is not sufficient to require a new trial. *State v. Schwartz*, 2014-NMCA-066, ¶ 15, 327 P.3d. 1108. A new trial is required only if the improperly admitted evidence harmed the defendant. *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. "The [s]tate bears the burden of demonstrating that the error was harmless." *Schwartz*, 2014-NMCA-066, ¶ 15. "[A] constitutional error is harmless when there is no reasonable possibility it affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (alteration, emphasis, internal quotation marks, and citation omitted).

**{13}**    Having carefully reviewed the record, we conclude that any error was harmless. During the custodial interview of Defendant with Detective Lockridge, Defendant admitted to sending the hard drive in question to DRC. He acknowledged that at least one of the videos was taken in his home, and more specifically, in his guest bathroom. Defendant also positively identified himself as being in a picture taken from one of the videos when the camera was being set up. Furthermore, one of the victims that worked as a babysitter for Defendant identified herself and Defendant's daughter as being in the videos, and testified that the video was recorded in Defendant's guest bathroom. Finally, Defendant's ex-wife identified Defendant's minor children in the videos.

**{14}**    In light of the aforementioned evidence presented at trial, we cannot conclude that confrontation of the DRC employees would create a reasonable possibility that such testimony would have affected the jury's verdict. "[T]he error is harmless only if we conclude that there is no reasonable possibility the error contributed to the jury's decision to convict [the d]efendant." *State v. Montoya*, 2014-NMSC-032, ¶ 49, 333 P.3d

935 (internal quotation marks and citation omitted). As such, even if Defendant's confrontation rights were violated, we conclude such violation to be harmless.[3]

## B. We Decline to Address Defendant's Argument That Agent Pillitiere Testified About Statements Made by Unidentified DRC Employees

{15} Defendant argues that the district court violated his right to confrontation by allowing Agent Pillitiere to testify about statements made by unidentified witnesses. The State argues that it never sought to admit any out-of-court, testimonial statements from the employees at DRC and the record confirms that Agent Pillitiere's testimony regarding the phone call he received from the DRC employee regarding the contents of Defendant's hard drive, was not offered not for the truth, but rather to provide a basis as to why Agent Pillitiere began his investigation in the first place.

{16} Moreover, Defendant *failed* to cite any place in the record where Agent Pillitiere testified about *statements* made by DRC employees. *See* Rule 12-318(A)(4) ("[A]n argument . . . , with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on."); *see also State v. Dominguez*, 2014-NMCA-064, ¶ 26, 327 P.3d 1092 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments." (internal quotation marks and citation omitted)). Despite this, our review of the record reveals no such testimony. Accordingly, we decline to review this issue any further.

## II. Expert Witness Disclosure

{17} As we understand Defendant's argument, he claims that the State violated Rule 5-501(A)(5) NMRA, his due process rights to notice, and did not give him an opportunity to adequately present a defense by failing to timely name Agent Weir as an expert witness.

{18} We review a district court's ruling on late discovery for abuse of discretion. *See State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. "In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *Id.* "Failure to disclose a witness' identity prior to trial in itself is not grounds for reversal. [The d]efendant has the burden of showing that he was prejudiced by the untimely disclosure." *State v. Vallejos*, 2000-NMCA-075, ¶ 32, 129 N.M. 424, 9 P.3d 668 (internal quotation marks and citation omitted).

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence;

---

[3]Having concluded that the absence of testimony from the DRC employees was harmless, we need not address Defendant's specific contention that the enforcement of the *Touhy* regulations, which precluded Defendant from discovering the identities of the DRC employees, violated his right of confrontation.

> (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*McDaniel*, 2004-NMCA-022, ¶ 8 (internal quotation marks and citation omitted); *see generally* Rule 5-501(A) (stating the initial duty of the state to disclose evidence in a criminal trial); Rule 5-505 NMRA (setting out the duty of parties to disclose any additional evidence or witnesses and various remedies for the violation of this rule).

**{19}** As to the duty owed by the State, it disclosed Agent Weir as a witness approximately one year and three months prior to Defendant's trial, and again four months prior to trial. However, as the State explained in the proceedings below, it inadvertently failed to identify Agent Weir as an expert witness pursuant to Rule 5-501(A)(5), which requires "a written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial, identifying any witnesses that will provide expert testimony and indicating the subject area in which they will testify" on these occasions.

**{20}** Next, we consider Defendant's showing of materiality. "The test for materiality, . . . is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted). Defendant contends that Agent Weir's expert testimony is material because his testimony regarding the videos, central to the State's case, were opinions predicated on other experts who did not testify at trial. We disagree.

**{21}** Agent Weir's expert testimony was not material because the other facts and evidence established at trial render it unlikely that the outcome of the trial would have been different absent his expert testimony. Defendant does not articulate exactly how the testimony from the experts from DRC, with direct knowledge of how the videos were extracted, would have undercut Defendant's admission that he sent the hard drive to DRC, his identification of himself as the individual in the videos, and his admission to setting the camera up in the guest bathroom of his home.

**{22}** Additionally, Defendant has not persuaded us that the failure to disclose Agent Weir as an expert witness prejudiced him. *See id.* ("[When] determining whether the defendant has been prejudiced . . . we look at whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." (alteration, internal quotation marks, and citation omitted)). Defendant argues that the videos are the "crux and core of the case against" him and that "[w]ithout the clips, there is simply no evidence of any of the crimes alleged to have been committed by" him. Defendant further contends that allowing Agent Weir to testify as an expert in the absence of testimony from those with direct knowledge of how the images at issue were extracted prejudiced him.

**{23}** Defendant's argument overlooks that, although the videos were admitted into evidence under Agent Weir, they were not admitted during the proffering of his expert opinions. The record reveals much of the foundation supporting the admission of the videos was established through other witnesses including, Defendant's former babysitter who identified herself and Defendant's guest bathroom in the videos; Defendant's ex-wife who identified Defendant's minor children in the videos; Detective Lockridge who identified Defendant in the videos by comparing Defendant's driver's license photo to the photo stills taken from the videos; and through the admission and playing of Defendant's custodial interview during which Defendant admitted he was in the videos putting the camera up, that the videos were taken in his guest bathroom, and that he sent the broken hard drive to DRC.

**{24}** Agent Weir testified that he participated in the search warrant of Defendant's house. Agent Weir also testified that he received DVDs with video files from Regional Computer Forensic Lab and that five of the videos contained footage of the camera being setup in a bathroom. Agent Weir's testimony established that the footage of the camera being setup in a bathroom did, in fact, depict Defendant's guest bathroom, which Agent Weir recognized from participating in the search of Defendant's house. While Agent Weir did testify as an expert, it was solely his lay testimony that was used to lay the foundation for admission of the videos. Therefore, even if the district court abused its discretion by permitting Agent Weir to testify as an expert in the face of the State's late disclosure, this error was harmless because the State did not rely on his *expert* testimony to admit the videos into evidence.

**{25}** Defendant also contends that the State's failure to designate Agent Weir as an expert witness prior to trial prevented him from obtaining his own expert in his defense. Upon review of the record, Defendant did consider retaining an expert witness to aid in his defense, but seemingly decided against calling an expert witness at trial for reasons that the record does not reveal. On appeal, Defendant asserts—without citing any part to the record—that he did not call an expert because of the State's failure to identify Agent Weir as an expert. We decline to rely on counsel's unsupported arguments, *see State v. Cordova*, 2014-NMCA-081, ¶ 14, 331 P.3d 980, and therefore conclude that Defendant has not established that the decision not to call a defense expert at trial—a decision that could have been made for any number of reasons—was based on the State's failure to identify Agent Weir as an expert.

### III. Hearsay

**{26}** Defendant contends that the order form Agent Pillitiere obtained from DRC was hearsay and was erroneously admitted as a statement of a party opponent because the State failed to lay an adequate foundation for its admission under any Rule of Evidence. Defendant argues that without testimony from anyone who heard or saw Defendant making the statements on the order form, there was no foundation for its admission as a statement of a party opponent. Defendant further argues that there were no testifying witnesses at trial that had direct knowledge of how the order form came into existence and it should have never been admitted into evidence. The State first contends that

Defendant failed to preserve this issue by raising an adequate objection in the district court. Our review of the record satisfies us that Defendant adequately preserved this issue for review. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). The State further contends that the order form was not hearsay and the district court properly admitted the order form as a statement by a party opponent under Rule 11-801(D)(2)(a) NMRA. We hold that the DRC order form was admitted in error; however, the error was harmless.

**{27}** Hearsay is an out-of-court statement, which is later offered in evidence to prove the truth of the matter asserted. Rule 11-801(C). Under New Mexico's rules of evidence, hearsay is inadmissible unless a valid exception applies. Rule 11-802 NMRA. "We review the admission of evidence pursuant to the hearsay rule for an abuse of discretion." *State v. Leyba*, 2012-NMSC-037, ¶ 10, 289 P.3d 1215.

**{28}** The State contends that the form was a statement of a party opponent because it was sent to DRC along with the hard drive and contained Defendant's name, address, and the hard drive's serial number. Upon our review of the record, the State did not present any witness testimony that could confirm that Defendant was the individual who made the statements in the order form, beyond the fact that his information was contained within the order form. Rule 11-801(D)(2)(a) provides, "[A] statement . . . offered against an opposing party and . . . made by the party in an individual or representative capacity [is not hearsay.]" While the text of this rule does not require additional foundation, the State failed to establish that the order form was a statement made by Defendant in his individual capacity. Without more, we conclude that the order form was admitted in error because it is not a statement of a party opponent.

**{29}** As he did below and on appeal, Defendant raises the possibility that the order form was not a statement of a party opponent, but rather, a business record and that the State failed to lay adequate foundation for its admission. To satisfy the foundation requirements of the records of a regularly conducted activity, i.e. business records, exception to the hearsay rule, a party must establish that

> (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge, (b) the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit, and (c) making the record was a regular practice of that activity[.]

Rule 11-803(6)(a)-(c) NMRA. Furthermore, the rule requires that "all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 11-902(11) or (12) NMRA, or with a statute permitting certification." Rule 11-803(6)(d). The State did not offer any witnesses from DRC or anyone with knowledge of how these types of order forms are created, used, or recorded within the business. Additionally, the State did not satisfy any of the requirements laid out in Rule 11-803(6)(a)-(c) to admit the order form as a business

record. Thus, even if the order form was a business record, the State did not establish that the order form was admissible pursuant to this hearsay exception.

**{30}** In sum, the DRC order form is not a statement of a party opponent, and the State did not lay the foundation to properly admit the form under the business record exception of the hearsay rule. We conclude that the district court abused its discretion by admitting the DRC order form into evidence. However, "[w]e now analyze whether this evidentiary error was merely harmless, in which case we could overlook it, or prejudicial, requiring reversal." *Leyba*, 2012-NMSC-037, ¶ 23.

**{31}** Because admitting the DRC order form was an evidentiary error, we apply the non-constitutional error standard for harmless error. *See Tollardo*, 2012-NMSC-008, ¶ 36. While a constitutional error requires only a "reasonable *possibility* of prejudice" for reversal, "[a] non-constitutional error requires reversal when there is a reasonable *probability* that misconduct contributed to the defendant's conviction." *Leyba*, 2012-NMSC-037, ¶ 24 (second emphasis added) (internal quotation marks and citation omitted). "To judge the probable effect of an evidentiary error, courts must evaluate all circumstances surrounding the error." *Id.* (internal quotation marks and citation omitted). In doing so, "[w]e examine the error itself, including the source of the error and the emphasis placed on the error at trial." *Id.* "To put the error in context, we often look at the other, non[]objectionable evidence of guilt . . . to evaluate what role the error played at trial." *Id.* We conduct this analysis on a "case-by-case" basis. *Id.*

**{32}** Although the State used the order form to establish Defendant was the individual who sent the hard drive to DRC, there was other nonobjectionable evidence presented at trial that established this fact. Specifically, the jury was presented with Defendant's statement to Detective Lockridge that he had sent the hard drive to DRC in Ohio to have data recovered from it. For these reasons, we conclude that the district court committed error in the admission of the evidence, but such an error was harmless.

## IV. Prosecutorial Misconduct

**{33}** Defendant argues that the State engaged in prosecutorial misconduct in four ways: (1) by thwarting Defendant's attempts to have the hard drives examined by its own expert, (2) by hiding its intent to present expert testimony, (3) by presenting a witness that could not be cross-examined about key issues involving the discovery of the only evidence supporting the charges, and (4) by violating the Rules of Evidence by misleading the district court about the proper foundation for admission of evidence.[4]

---

[4]Additionally, Defendant raises a prosecutorial misconduct argument on the basis that his confrontation right was violated due to the enforcement of restrictions premised on *Touhy* that prevented Agent Pillitiere from identifying his sources. However, Defendant's argument is limited to one sentence that asserts, without further analysis or explanation, that the State engaged in prosecutorial misconduct because it presented a witness who declined to testify to the identities of the witnesses from DRC. The State briefly responds by asserting that Agent Pillitiere lawfully declined to name his sources and that Defendant was aware of this refusal to disclose as early as pretrial interviews. Without more, we decline to review the matter any further. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 ("[T]his Court has no duty to review an argument that is not adequately developed.").

Defendant contends that these acts by the State demonstrate a willful disregard to Defendant's rights to due process and a fair trial. Finally, Defendant asserts that even if the State's conduct was remedied, a retrial is barred by his protection against double jeopardy. Defendant did not preserve his prosecutorial misconduct argument below.

**{34}** We review unpreserved claims of prosecutorial misconduct for fundamental error. *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814. In conducting our review, "we begin with the presumption that the verdict was justified, and then ask whether the error was fundamental." *State v. Sosa*, 2009-NMSC-056, ¶ 37, 147 N.M. 351, 223 P.3d 348. It is the defendant's burden to establish fundamental error. *See id.* ¶ 41. "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* ¶ 35. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). To hold that fundamental error occurred, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted).

**{35}** Defendant's argument, which includes only one citation to the record, consists of summaries of precedents from our Supreme Court and two conclusory sentences. He offers no analysis to explain how these precedents apply to the facts of his case. Because Defendant's argument is undeveloped as to whether the conduct at issue amounted to misconduct and, if so, whether it rose to the level of fundamental error, we decline to reach the merits of the argument. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (refusing to address undeveloped, conclusory arguments that did not appear to be preserved, reasoning that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{36}** For the foregoing reasons, we affirm Defendant's convictions for one count of sexual exploitation of a child and two counts of voyeurism of victims under the age of eighteen.

**{37}** **IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**